[No. 9395-6-III. Division Three. July 11, 1989.]

WILLIAM MESSERLY, ET AL, *Appellants,* v. ASAMERA MINERALS, (U.S.) INC., ET AL, *Respondents.*

812

*Dave Christianson* and *Jardine, Foreman & Appel,* for appellants.

*Deborah Allard* and *Preston, Thorgrimson, Ellis & Holman,* for respondents.

GREEN, J.—This action was brought by William Messerly, Sam Clarke and Kelly Cowlishaw (Miners) against their employer, Asamera Minerals, Inc., and two management employees, Tom Kelly and Jim Suthers (Asamera) to recover damages for their alleged wrongful discharge, defamation and outrage. Summary judgment was granted in favor of Asamera and the Miners appeal.[1] We affirm.

During 1984 and 1985, the Miners sought employment as gold miners in Asamera's Canon Mine near Wenatchee. The company's employment application form stated employment may be "terminated at any time without any previous notice." They were hired.

In February 1986 an existing employee handbook was superseded by a second handbook, which in early December was superseded by a third handbook. The opening page of handbook 3 provided:

INTRODUCTION
This handbook is provided to give you a handy reference to Company policies, work rules and benefits. It will be to your advantage to become familiar with these policies as quickly as possible. However, as it is not possible to cover every situation, it is important that you go over any questions you have now or in the future with your supervisor.

Please understand that this booklet only highlights Company policies, practices and benefits and therefore cannot be construed as a contract or a legal document. In addition, circumstances may require that policies, practices and benefits be changed from time to time. Consequently, the Company reserves the right to amend, supplement or rescind any provisions of this handbook as it deems appropriate in its sole and absolute discretion. As policies and benefits are revised, updated pages will be distributed to you. Please keep this handbook readily available and insert the updated material promptly so that it is current at all times.

---

[1]Dismissal of the outrage claim is not challenged on appeal.

Employment at Asamera is at the Company's will and is determined in accordance with the needs of the Company as those needs are determined by the Company and its management.

Each Miner attended an employee meeting where the handbooks were distributed and the provisions explained. At the meeting, personnel manager Jim Suthers read aloud the introductory section and volunteered to answer questions; none were posed by the Miners.

On December 15 a co-worker informed mine superintendent Tom Kelly that he observed the Miners smoking marijuana underground in the mine. A well publicized rule of Asamera was that all employees were required, under penalty of termination, to comply with a written safety rule prohibiting possession of smoking materials underground to prevent explosions in gaseous areas. This rule conformed to the provisions of WAC 296–61–080(1). The informant gave dates, times and locations of the violations. On December 17 the Miners were suspended without pay. Each denied the charges, resulting in an internal investigation. Mr. Kelly met again with the informant and found no discrepancies in his story. No indication of hostility between the Miners and the informant was discovered. It was verified from work records that the informant was in a position to make the observations alleged at the times stated. The informant's identity was not disclosed because one of the Miners threatened to kill the informant if he discovered his identity. Other miners confirmed to Mr. Kelly that drug use was prevalent in the mines, but names were not revealed for fear of retaliation. Both Messrs. Kelly and Suthers testified in depositions they believed the information obtained in the investigation was true.

The Miners were terminated on December 19. They were not apprised of the times and places of the allegations or allowed to confront the informant. The general manager of the mine, Mark Anderson, then distributed a memorandum to all mine employees, which is the subject of the defamation claim in this action. The memorandum stated in part:

I am sure you are all aware of the recent terminations of several mine employees. Some of the situations involve use of illegal drugs on the job. As all of us are aware, company policy in regard to smoking underground, use of any alcohol, illegal drugs, or any other substance that could affect your performance is very clear. It will not be tolerated.

In March 1987, this action was filed. In June Messrs. Suthers and Kelly were deposed by the Miners. In August they moved to compel disclosure of the informant's identity. Asamera then obtained an order allowing discovery of the identity under protective conditions, but only if its summary judgment motion was denied. That motion was granted in May 1988 resulting in this appeal.

First, the Miners contend the court erred in ruling employee handbook 3 preserved an at–will employment relationship citing *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 685 P.2d 1081 (1984). They argue the at–will language in the introduction to handbook 3 is not conspicuous. Therefore, they claim a factual question exists as to whether the handbook, which repeatedly assures fair treatment, provides for something more than a summary termination. They also argue it was not explained that the at–will provisions prevailed over the disciplinary policies contained elsewhere in the handbook.

*Thompson* sets forth exceptions to the employment at will doctrine. There, in a cause of action for wrongful termination, the employee relied on portions of the personnel manual. It was held that "employers may be obligated to act in accordance with policies as announced in handbooks issued to their employees." *Thompson*, at 229. The court reasoned:

> It would appear that employers expect, if not demand, that their employees abide by the policies expressed in such manuals. This may create an atmosphere where employees *justifiably rely* on the expressed policies and, thus, justifiably expect that the employers will do the same. . . .
> Therefore, we hold that if an employer, for whatever reason, creates an atmosphere of job security and fair treatment with promises *of specific treatment in specific situations* and an employee is induced thereby to remain on the job and not

actively seek other employment, those promises are enforceable components of the employment relationship.

*Thompson,* at 230. However, an employer may draft the handbook to disclaim being bound by its contents by stating in a conspicuous manner that "nothing contained therein is intended to be part of the employment relationship and are simply general statements of company policy." *Thompson,* at 230. The construction and legal effect of such statements in an employee handbook is a question of law. *Stewart v. Chevron Chem. Co.,* 111 Wn.2d 609, 613, 762 P.2d 1143 (1988). Additionally, the employer may redefine the work relationship and an at–will employee must "either accept those changes, quit, or be discharged." *Thompson,* at 229.

██ Here, the Miners signed documents acknowledging they were notified handbook 1 was superseded. They remained on the job after handbooks 2 and 3 took effect. Each Miner received a copy of those handbooks, the provisions were explained to them, and none questioned their contents, which included the at–will employment language and the disclaimer of contract provision. Since these were specifically explained to them, they cannot now claim the language is inconspicuous. *See Chadwick v. Northwest Airlines, Inc.* 33 Wn. App. 297, 654 P.2d 1215 (1982) (one who acknowledges understanding of document cannot claim to have been misled thereby), *aff'd,* 100 Wn.2d 221, 667 P.2d 1104 (1983). Moreover, the at–will language in the introduction meets the criteria stated in *Thompson*; and, its placement in a separate paragraph in the introductory section is sufficiently conspicuous to be noticeable. *Cf. Nettles v. Techplan Corp.,* 704 F. Supp. 95 (D.S.C. 1988) (contrast in type or color not required when disclaimer is contained in separate paragraph on first page of manual); *Bailey v. Perkins Restaurants, Inc.,* 398 N.W.2d 120 (N.D. 1986) (disclaimer language placed inside a box immediately after the introductory section was conspicuous). The Miners were notified in their written applications that their employment would be at the will of Asamera and that relationship was

preserved through handbook 3. *See Grimes v. Allied Stores Corp.,* 53 Wn. App. 554, 768 P.2d 528, *review denied,* 112 Wn.2d 1025 (1989).

Second, the Miners contend the court erred in granting a summary judgment on their defamation claim on the basis they did not establish a prima facie case. They also argue the court erred by denying their motion for a continuance to allow further discovery with reference to whether Asamera's actions were malicious or contrary to public policy. The defamation claim was premised on the memorandum distributed by Mark Anderson to all Asamera employees that several employees had been terminated for illegal use of drugs on the job and restating company policy in that respect. We find no error.

■ To defeat a motion for summary judgment in a defamation action against a nonmedia defendant regarding private affairs, the plaintiff must establish a prima facie case as to *each* of four elements: falsity, unprivileged communication, fault, and damages. *LaMon v. Butler,* 112 Wn.2d 193, 197, 770 P.2d 1027, *cert. denied,* 107 L. Ed. 2d 29 (1989); *Guntheroth v. Rodaway,* 107 Wn.2d 170, 175, 727 P.2d 982 (1986). A plaintiff who is a private figure must show only negligence. *LaMon,* at 197; *Bender v. Seattle,* 99 Wn.2d 582, 599, 664 P.2d 492 (1983). The evidence is viewed most favorably to the nonmoving party. *Herron v. Tribune Pub'g Co.,* 108 Wn.2d 162, 170, 736 P.2d 249 (1987).

Here, with respect to the element of falsity, there appears to be an issue of fact as each Miner denied drug usage. Since a prima facie case of defamation requires all four elements be established, the Miners incorrectly argue this element alone precludes summary judgment.

■■ With respect to the element of unprivileged communication, the Miners have not carried their burden. Here, the record shows Asamera exercised a qualified privilege. Such a privilege exists when it concerns a matter in which the publisher has an interest and is made to another

whom it is reasonably believed has a corresponding interest. *Twelker v. Shannon & Wilson, Inc.,* 88 Wn.2d 473, 478, 564 P.2d 1131 (1977); *Parry v. George H. Brown & Assocs., Inc.,* 46 Wn. App. 193, 196, 730 P.2d 95 (1986). When there is no dispute that the communication was made, the question of privilege is one of law. *Gem Trading Co. v. Cudahy Corp.,* 92 Wn.2d 956, 960, 603 P.2d 828 (1979). Proof of knowledge or reckless disregard as to the falsity of a statement is required to establish abuse of a qualified privilege. *Guntheroth,* at 177 n.2; *Lillig v. Becton–Dickinson,* 105 Wn.2d 653, 717 P.2d 1371 (1986); *Parry,* at 196 n.1. The defendant's belief may arise from a fair and impartial investigation or from other reasonable grounds; merely establishing falsity of the statement is not enough to overcome the privilege. *Lillig,* at 657–58. The totality of the defendant's knowledge *before* publication is considered in making the determination. *Guntheroth,* at 177 n.3.

Here, Asamera had a duty to maintain a safe workplace for its employees.[2] In the investigation preceding the terminations, it was learned that drug use was prevalent underground even though it was a well–known cause for immediate discharge. Because Asamera and its employees have a common interest in safety and deterring illegal use of drugs in the mine, the memorandum calling attention to the rules and the violations was subject to a qualified privilege. The evidence shows Asamera representatives reasonably believed the allegations against the Miners and the content of the memorandum were true. Mr. Anderson distributed the memorandum because "Asamera has an affirmative statutory duty to provide a safe workplace . . ." In

---

[2]The Washington Administrative Code for mine safety contains strict regulations that "narcotics shall not be permitted or used in or around mines. Workmen under the influence of . . . narcotics shall not be permitted on the job." WAC 296–61–050(1). It is provided in WAC 296–61–080(1) that "[n]o person shall smoke or use an open flame: . . . (c) Within an unsafe distance of any area where [it] may cause a fire or an explosion."

these circumstances, there was no abuse of qualified privilege.[3] Thus, there was no error in summarily dismissing the defamation claim.

■ With respect to the Miners' request for a continuance, CR 56(f) allows the court, in its discretion, to "order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had . . ." *See Lewis v. Bell*, 45 Wn. App. 192, 196, 724 P.2d 425 (1986). However, when a motion to stay a hearing is not properly supported, the court has a right and duty to hear the motion for summary judgment on the basis of the showing before it. *Shoberg v. Kelly*, 1 Wn. App. 673, 676, 463 P.2d 280 (1969), *review denied*, 78 Wn.2d 992 (1970). *See also Winterroth v. Meats, Inc.*, 10 Wn. App. 7, 14, 516 P.2d 522 (1973). Such is the case here.

The Miners did not support their request for a continuance with affidavits or explain why the publisher of the memorandum, Mr. Anderson, was not deposed. Neither did they explain the failure to move for leave to amend their complaint to include a public policy claim, which must be specifically pleaded in wrongful discharge cases. *Thompson*, at 232. There was no abuse of discretion in denying the motion for continuance.

---

[3]*See Garziano v. E.I. Du Pont De Nemours & Co.*, 818 F.2d 380 (5th Cir. 1987) (publication to co-workers that plaintiff was discharged for violating sexual harassment policy was privileged by commitment to enforcement of statutory duty to maintain workplace free of sexual harassment); *Gordon v. Tenneco Retail Serv. Co.*, 666 F. Supp. 908 (N.D. Miss. 1987) (employer's statement to employees that plaintiff terminated for theft was privileged); *Burns v. Supermarkets Gen. Corp.*, 615 F. Supp. 154 (E.D. Pa. 1985) (supervisor's comments to co-workers that plaintiff discharged for theft was privileged); *Happy 40, Inc. v. Miller*, 63 Md. App. 24, 491 A.2d 1210 (employer's interest in avoiding appearance of arbitrariness that would affect employee morale sufficient to sustain privilege), *review denied*, 304 Md. 299, 498 A.2d 1185 (1985); *Ponticelli v. Mine Safety Appliance Co.*, 104 R.I. 549, 247 A.2d 303 (1968) (statements to employees regarding plaintiff's "push[ing] a pencil" privileged when made with purpose of protecting plant property).

820

In light of our decision, we need not reach the issue of whether a cause of action exists for compelled self–publication, *i.e.,* apprising prospective employers of the reason for termination.

Affirmed.

THOMPSON, C.J., and MUNSON, J., concur.