[No. 10150-9-III.   Division Three.   July 12, 1990.]

RICHARD SIEKAWITCH, *Respondent,* v. WASHINGTON
BEEF PRODUCERS, INC., *Appellant.*

*Robert Tenney, Mark D. Watson,* and *Meyer, Fluegge & Tenney,* for appellant.

*David H. Putney,* for respondent.

GREEN, J.—Richard Siekawitch was hired by Washington Beef Producers, Inc., of Yakima in 1979. His employment was terminated in 1984. He then brought this action against Washington Beef for wrongful termination. At trial Washington Beef moved for a directed verdict on the issue of liability. The court granted the motion with respect to the theories of express and implied contract; however, it submitted to the jury the issue of whether the company

breached promises of specific treatment in specific situations contained in an employee manual. Mr. Siekawitch was awarded $130,000 in damages. Washington Beef appeals; Mr. Siekawitch cross–appeals.

Washington Beef contends the court erred by (1) not granting its motion for a directed verdict as to all theories; (2) instructing the jury that termination required just cause; and (3) refusing to instruct that termination could be justified on grounds not designated at the time of discharge. In the cross appeal, Mr. Siekawitch contends the court erred by (1) dismissing his express and implied contract theories; and (2) refusing to admit certain impeachment evidence supporting his claim that his termination was for pretextual reasons. We affirm in part, reverse in part and remand for a new trial.

Washington Beef hired Mr. Siekawitch in 1979 for an indefinite term to supervise the shipping and cooling departments at its plant in Yakima. At the initial employment interview, Jim King, the chief executive officer and plant general manager, told him that if he did his job he would "stay and . . . advance . . .". There was no written employment contract. Within a short time, he became traffic manager in addition to his other duties.

In 1983 the company issued its first employee manual. It contained a section entitled "Plant Rules":

> Violations of the following [20] rules are subject to disciplinary action up to and including discharge:
>
> . . . .
>
> 12. Unauthorized solicitations, collection funds, pledges, subscriptions, circulation of petitions and leaflets, solicitation of membership, transaction of personal business and conducting activities of a similar nature.
>
> . . . .
>
> 16. Failure to perform a job according to established standards or procedure, inefficiency, laziness, poor housekeeping, sleeping in the plant or other undesirable performance.

Mr. Siekawitch testified he was told the plant rules applied to him. He claims he relied on them and while employed by Washington Beef never looked elsewhere for work.

In August 1984, Mr. Siekawitch was terminated for the stated reason of "poor job performance". The evidence indicates the company also justified his termination based on the fact his duties could be assimilated by another employee. Additionally, he was criticized by his co–workers for conducting personal business on company time. The evidence was in sharp conflict with respect to each of these reasons. Mr. Siekawitch took the position his termination was pretextual because he was caught in the middle of a struggle between the owners of the company—the Monsons and Van de Graafs on the one side and the Schaakes on the other—concerning allocations of product to be hauled by Pistoresi & Sons and Ellensburg Transportation (Ell Trans). Mr. Siekawitch believed his dismissal was caused by his questioning the actions of Paul Schaake, the plant superintendent, who he claimed was pressuring him to divert loads to Ell Trans. The Schaakes had a security interest in some of Ell Trans' trucks.

The jury returned a special verdict finding Mr. Siekawitch justifiably relied on promises of specific treatment in specific situations contained in the manual and that the company breached such promises causing Mr. Siekawitch $130,000 in damages. The court awarded him $37,101.25 in attorney fees.

First, instead of giving instructions 4, 6 and 10, Washington Beef contends the court should have granted its motion for a directed verdict on Mr. Siekawitch's claim of breach of promises of specific treatment in specific situations contained in the manual. *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 685 P.2d 1081 (1984). The company argues there was no evidence Mr. Siekawitch was aware of, or relied on, any specific provisions in the manual in remaining on the job and not actively seeking other employment. In any event, Washington Beef contends, the court should have ruled as a matter of law the policy manual did not provide promises of specific treatment in specific situations, citing *Stewart v. Chevron Chem. Co.*, 111

Wn.2d 609, 762 P.2d 1143 (1988) and *Messerly v. Asamera Minerals, (U.S.) Inc.,* 55 Wn. App. 811, 780 P.2d 1327 (1989). We find no error.

■ In general, an employment contract indefinite in duration is terminable at the will of either the employer or employee, with or without cause. *Roberts v. ARCO,* 88 Wn.2d 887, 891, 568 P.2d 764 (1977). However, in *Thompson v. St. Regis Paper Co., supra,* the court outlined exceptions to this rule. There, in an action for wrongful termination, it was shown the employee relied on the terms of a policy manual. The court held that "employers may be obligated to act in accordance with policies as announced in handbooks issued to their employees." *Thompson,* at 229. The court reasoned:

> It would appear that employers expect, if not demand, that their employees abide by the policies expressed in such manuals. This may create an atmosphere where employees *justifiably rely* on the expressed policies and, thus, justifiably expect that the employers will do the same. . . .
> Therefore, we hold that if an employer, for whatever reason, creates an atmosphere of job security and fair treatment with promises *of specific treatment in specific situations* and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employment relationship.

*Thompson,* at 230.

■ Here, the Washington Beef manual is unclear as to whether the at–will relationship was preserved. It generally describes an atmosphere of fair treatment in personnel policies and then specifies 20 plant rules, the violation of which "*are subject to disciplinary action up to and including discharge*". (Italics ours.) While this language could mean the company retains discretion to terminate an employee at will and the listed reasons are merely illustrative violations, it may also mean no termination will occur unless the rules are violated. Since the manual is susceptible to differing interpretations and the evidence is conflicting on which interpretation was intended, an issue of

fact existed over whether an at–will relationship was preserved.[1] *See Thompson,* at 233.

■ In reviewing the court's denial of Washington Beef's motion for a directed verdict on this issue, there must be substantial evidence, when viewed in the light most favorable to Mr. Siekawitch, to support affirmative answers to these questions: (1) Did the policy manual apply to Mr. Siekawitch as a supervisor? (2) Did the manual create an atmosphere of job security and fair treatment with promises of specific treatment in specific situations? (3) Did Mr. Siekawitch justifiably rely on such promises? (4) Did the company breach promises in the manual thereby causing damage to Mr. Siekawitch? *Thompson,* at 233; *see also Brady v. Daily World,* 105 Wn.2d 770, 775, 718 P.2d 785 (1986). The challenged jury instructions 4,[2] 6[3] and

---

[1]Both *Stewart* and *Messerly,* cited by Washington Beef, are distinguishable from the instant case. In *Stewart,* it was held, as a matter of law, that the following handbook provision was not a promise of specific treatment: "In determining the sequence of layoffs due to lack of work, consideration *should* be given to performance, experience and length of service." (Italics ours.) *Stewart,* at 611, 613–14. Unlike Mr. Siekawitch, the employee in *Stewart* did not know of the layoff provision prior to discharge. In *Messerly,* this court held the at–will employment relationship was preserved as a matter of law by a conspicuous disclaimer provision in the introductory section of the handbook which the employees acknowledged understanding. *Messerly,* at 816–17. Here, the Washington Beef manual does not contain such a disclaimer.

[2]Instruction 4 stated:
"The plaintiff claims that the defendant promised him specific treatment in specific situations and that he reasonably relied on those promises and was thereby induced to remain on the job and not actively seek other employment. The plaintiff further claims that in discharging him, defendant violated its promise of specific treatment in specific situations, and that he was therefore improperly discharged. Plaintiff claims that defendant's conduct was a proximate cause of damage to plaintiff. The defendant denies these claims.
"In addition, the defendant claims the dismissal was proper.
"The defendant further denies the nature and extent of the claimed damage."

[3]Instruction 6 stated:
"Plaintiff has the burden of proving each of the following propositions:
"1. That the company policy and amendments applied to plaintiff.

$10^4$ and the special verdict correctly presented these issues and the at–will doctrine to the jury.

Focusing on the substantial evidence question, only justifiable reliance is in issue. Mr. Siekawitch testified he knew of the 20 plant rules, believed they applied to him, relied on them, and never once looked elsewhere for work while employed at Washington Beef. Paul Schaake, who helped draft the manual, testified the company issued it to instill a feeling of security in its employees, and the plant rules were intended to require justification for discharge. This evidence sufficiently raised a jury question as to whether Mr. Siekawitch justifiably relied on promises of specific treatment in specific situations. Thus, there was no error in submitting this issue to the jury.

At this juncture, to facilitate review of Washington Beef's other claimed instructional errors, we will address Mr. Siekawitch's cross appeal that the court erred in directing a

---

"2. That defendant, through the company policy, created an atmosphere of job security and fair treatment with promises of specific treatment in specific situations.

"3. That plaintiff justifiably relied on these promises of specific treatment in specific situations and was induced thereby to remain on the job and not actively seek other employment.

"4. That defendant breached its promises of specific treatment in specific situations.

"5. That plaintiff was damaged.

"6. That defendant's breach was a proximate cause of plaintiff's damage.

"If you find from your consideration of all the evidence that each of the propositions has been proved, your verdict should be for the plaintiff. On the other hand, if you find that any proposition has not been proved, your verdict should be for the defendant."

[4]Instruction 10 stated:

"Generally, an employment contract, indefinite as to duration, is terminable at will by either the employee or the employer. An employment contract which is terminable 'at will' means the employer may terminate the employee without cause or for any reason which the employer deems sufficient.

"If, however, an employer creates an atmosphere of job security and fair treatment with promises of specific treatment in specific situations, and the employee is induced to remain on the job and not actively seek other employment, those promises are a part of the employment relationship."

verdict on his express or implied contract claims. We find no error.

Mr. Siekawitch argues there was substantial evidence to support his express contract theory based upon Mr. King's statement at his initial interview in 1979 that as long as he did the job he would stay and advance with the company. He claims in reliance on this statement, he sold a fast food business and accepted Mr. King's offer of employment, thus satisfying the elements of an express contract. *Toussaint v. Blue Cross & Blue Shield*, 408 Mich. 579, 292 N.W.2d 880 (1980). He further argues there was also substantial evidence of an implied contract, citing *Thompson*, at 233. We disagree.

The burden of proving a contract is on the party asserting it and requires proof of each essential element. *Johnson v. Nasi*, 50 Wn.2d 87, 91, 309 P.2d 380 (1957). Washington courts adhere to the objective manifestation theory of contracts, which imputes to a person an intention corresponding to the reasonable meaning of words and acts. *Dwelley v. Chesterfield*, 88 Wn.2d 331, 335, 560 P.2d 353 (1977). Unexpressed intentions have no bearing on mutual intention. *Dwelley v. Chesterfield, supra.*

In *Toussaint*, relied upon by Mr. Siekawitch, the employees specifically negotiated for job security. One was told he would be with the company "'as long as I did my job'"; the other was told that if he was "'doing the job'" he would not be discharged. *Toussaint*, 408 Mich. at 597, 610. The court held:

> When a prospective employee inquires about job security and the employer agrees that the employee shall be employed as long as he does the job, a fair construction is that the employer has agreed to give up his right to discharge at will without assigning cause and may discharge only for cause . . ..

*Toussaint*, 408 Mich. at 610. We do not find *Toussaint* controlling.

Here, Mr. Siekawitch testified written company policy played no part in his decision to accept employment; instead, he relied on Mr. King's statement that if he did his

job well he would "stay and . . . advance . . ." or he would "do well with the company, . . . advance in wages, . . . and . . . have a good future there." We have reviewed the record and, unlike *Toussaint,* find no evidence that Messrs. Siekawitch and King specifically bargained for job security which would require discharge only for cause. Mr. Siekawitch did not testify that he gave up his fast food business in return for employment at Washington Beef. His reliance on Mr. King's statement only reveals a subjective belief derived from statements typical in employment interviews and is insufficient to erase the at–will doctrine. Only when the parties specifically bargain for security will the law require just cause for termination. *Toussaint v. Blue Cross & Blue Shield, supra.* Consequently, the court properly directed a verdict on the express contract claim.

With respect to an implied contract, Mr. Siekawitch's argument, citing *Thompson,* at 233, is that promises of specific treatment in specific situations are the equivalent of a promise of termination only for just cause. Therefore, he contends, the court erred in directing a verdict against him on that theory. This argument misconstrues *Thompson.* There, at page 233, the court concluded:

> An employment contract indefinite as to duration, is terminable at will by either the employee or employer. But such a contract is terminable by the employer only for cause if (1) there is an expressed or implied agreement to that effect or (2) the employee gives consideration in addition to the contemplated service. *Moreover, promises of specific treatment in specific situations found in an employee manual . . . issued by an employer to . . . employees may, in appropriate situations, obligate the employer to act in accord with those promises.*

(Citation omitted. Italics ours.) The emphasized language indicates an employer is obligated to act in accord with the promises expressed in the manual. If the employer fails to do so, then the promise in the manual has been breached and the employee may recover damages. This obligation is reflected in instructions 4, 6 and 10. Thus, the evidence does not support an implied contract of discharge only for cause.

We hold the court correctly concluded the evidence supports only the theory of breach of promises of specific treatment in specific situations and the express and implied contract theories were properly rejected. Thus, the court did not err in its ruling on the motion for directed verdict.

Second, Washington Beef contends the court erred in instructing the jury that termination required just cause if the employee manual applied, citing *Baldwin v. Sisters of Providence in Wash., Inc.*, 112 Wn.2d 127, 769 P.2d 298 (1989). We agree.

In *Baldwin,* there was an employee manual that specifically required just cause for discharge. That is not the situation here. The Washington Beef manual did not contain such a provision and there was no other express or implied contract that would create such a requirement. The injection of just cause into the case[5] was confusing and prejudicial in that neither of the theories presented to the jury required just cause be shown, *i.e.,* specific treatment in specific situations and employment at will. For example, the jury could have found Mr. Siekawitch was discharged for pretextual reasons and that was not just cause; whereas, under the at-will doctrine or the manual, the discharge would have been proper without just cause.

Washington Beef's proposed instructions 18, 19 and 20 provided, in essence, that dismissal was justified even if no grounds existed so long as the employer reasonably believed they did. These instructions would render illusory the promises of specific treatment in specific situations under *Thompson* and were thus properly rejected.

Third, Washington Beef contends the court erred in refusing to instruct the jury that an employer may justify dismissal for any reason, even though not designated, that

---

[5]Instruction 9 stated:

"You are instructed that if you find the employment manual applies to the plaintiff, then his discharge must be supported by a fair and honest cause or reason regulated by good faith on the part of the defendant based upon facts reasonably believed by the defendant to be true and which are not for any arbitrary or capricious reason."

existed at the time of termination. *Haag v. Revell,* 28 Wn.2d 883, 184 P.2d 442 (1947). We find no error.

■ In *Haag,* the employment contract was definite in duration, *i.e.,* 1 year. In light of the fixed term of employment, the court held a showing of good cause was required and such cause could be based on a ground not designated but which existed at the time of termination. *Haag,* at 889. Here, Mr. Siekawitch was employed for an indefinite term. Thus, *Haag,* is not apposite.

Fourth, Washington Beef contends any retrial should be limited to the issue of liability because the damage issue has been thoroughly litigated and not appealed. We agree.

■ *Mina v. Boise Cascade Corp.,* 104 Wn.2d 696, 707–08, 710 P.2d 184 (1985) is controlling:

> A new trial may be limited to certain issues where it clearly appears that the original issues were distinct and justice does not require resubmission of the entire case to the jury. *McCurdy v. Union Pac. R.R.,* 68 Wn.2d 457, 413 P.2d 617 (1966). If there is a possibility that the verdict was the result of a compromise, limiting retrial to certain issues is improper. *Myers v. Smith,* 51 Wn.2d 700, 321 P.2d 551 (1958). . . .
>
> In this case, the jury was properly instructed on damages and the special verdict form contained separate questions relating to liability and damages. Further, each party had an opportunity to present evidence on the damages question. On appeal, neither party has argued that the amount of damages was excessive or insufficient. *See France v. Peck,* 71 Wn.2d 592, 430 P.2d 513 (1967). Under these circumstances a retrial limited to the issue of liability is appropriate.

There is no evidence to suggest Mr. Siekawitch received a compromise verdict. Neither party on appeal questions the amount awarded and the special verdict segregated liability from damages. Thus, retrial should be limited to the question of liability. *Shaw v. Browning,* 59 Wn.2d 133, 367 P.2d 17 (1961), relied upon by Mr. Siekawitch, is distinguishable. There it was agreed the verdict was inadequate and the evidence suggested the plaintiff received a compromise verdict.

Finally, in his cross appeal, Mr. Siekawitch contends the court erred in not allowing him to impeach Richard Van de

Graaf, a former principal in Washington Beef, using a certified transcript of his testimony from a 1988 Washington Utilities and Transportation Commission (WUTC) hearing. He argues that testimony, which concerns whether the Schaake family interfered with the trucking of Washington Beef's product, was relevant to confirm his theory of pretextual discharge and should be allowed at the retrial. We disagree.

The record shows Mr. Van de Graaf's testimony at the WUTC hearing was cumulative of his trial testimony. Moreover, he did not have firsthand knowledge of the allegations against the Schaakes. Consequently, this testimony is not admissible on retrial.

In light of our decision, the award of attorney fees to Mr. Siekawitch for the trial is reversed and both parties shall bear their own attorney fees on appeal.

Affirmed in part; reversed in part and remanded.

MUNSON, C.J., and THOMPSON, J., concur.