[No. 12894-6-III.   Division Three.   March 29, 1994.]

FRAN BIRGE, *Appellant*, v. FRED MEYER, INC., *Respondent*.

David H. Putney and Putney Mazzola, for appellant.

James R. Dickens and Miller, Nash, Wiener, Hager & Carlsen, for respondent.

THOMPSON, C.J. — Fran Birge appeals the summary dismissal of her wrongful discharge action against Fred Meyer, Inc. She asserts an issue of material fact exists as to whether statements made by Fred Meyer in an "Employee Responsibilities" form amounted to an enforceable promise to discharge her only for cause. She also contends a dispute of fact exists as to whether she justifiably relied to her detriment on those statements. We affirm.

In 1979, Fred Meyer hired Fran Birge as a sales associate in the jewelry department of its Yakima store. In 1980, she became the assistant manager of the jewelry department, and in 1983, she was promoted to manager. Fred Meyer fired Ms. Birge on May 31, 1990, for allegedly converting company property. Ms. Birge subsequently brought this action for wrongful discharge.

Fred Meyer moved for summary judgment. In support of its motion, Fred Meyer filed the affidavit of Lu Hitchcock, its loss prevention manager. Ms. Hitchcock stated she had investigated certain discrepancies between invoices charged to the store and job orders completed by jewelry department employees. She discovered that Ms. Birge had special ordered two .03 carat diamonds set in a wedding band for her daughter. The goldsmith charged Fred Meyer for the work. Ms. Hitchcock also discovered Ms. Birge had special ordered a set of diamond earring jackets, which her daughter had picked up. Again, the goldsmith billed Fred Meyer. Ms. Hitchcock stated that company policy limits pickup of jewelry to certain employees and requires that jewelry be paid for prior to being released. Ms. Birge admitted she was aware of these policies, but she explained she did not immediately pay for the orders because she was busy preparing for her daughter's wedding on May 26. Ms. Hitchcock calculated Ms. Birge owed the store $223.70.

Fred Meyer also relied upon portions of Ms. Birge's deposition testimony. Ms. Birge stated that in April 1990, all store employees received a copy of a document entitled "Employee Responsibilities". The document provides in pertinent part:

> In fairness to all concerned, you need to know and understand the principal reasons for the action outlined below:
>
> I Employee Conduct Which Will Result In Immediate Termination Without Prior Warning:
>
> 1. Dishonesty of any kind — ON OR OFF THE JOB. . . .
>
> . . . .
>
> 11. Other employment-related misconduct which is determined by the company to be of an equally serious nature.
>
> II Employee Conduct Which Will Result In Disciplinary Action But Which Usually Results In Termination After Prior Warning:
>
> . . . .
>
> 3. Failure to comply with written company policies and procedures.

The document is only one page long and contains the following language, signed by Ms. Birge:

## EMPLOYEE ACKNOWLEDGEMENT

I acknowledge that I have read and understand the above principal causes for discharge, disciplinary action and resignation. I have clarified any questions with my immediate supervisor, Trainer or the Personnel Department and *understand this summary does not constitute an employment contract.*

(Italics ours.)

In response to Fred Meyer's motion for summary judgment, Ms. Birge submitted her own affidavit. She denied converting any property of the store. Ms. Birge stated she ordered the earring jackets to wear at her daughter's wedding on May 26. On the morning of the wedding, the jackets still were not ready. Ms. Birge called the district manager and left a message that she "was going to have the earring jackets picked up and that they would certainly be paid for". As for the wedding bands, she said she "did nothing regarding those purchases that is out of the ordinary or that has not been done in the past by other sales personnel for customers or relative[s]".

Ms. Birge attested that she relied upon the "Employee Responsibilities" form. She believed that as long as she performed within the framework set forth there, she would have a place to work until her retirement. She denied violating "any of the rules and regulations of the Employee Responsibilities Form . . .". According to Ms. Birge, "Fred Meyer's [*sic*] conducted no investigation in any meaningful sense . . . they did not contact Mr. Sierra [the goldsmith], me, nor anyone else to my knowledge between the time of my daughter's wedding [May 26] and the time I was fired [May 31]."

The Superior Court granted Fred Meyer's motion for summary judgment, and Ms. Birge appeals.

■ In *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 228-30, 685 P.2d 1081 (1984), our Supreme Court recognized a cause of action for wrongful discharge when the employer creates "an atmosphere of fair treatment and job security for [its] employees" by "promises *of specific treatment in specific situations* . . .", upon which employees "justifiably rely" and expect the employer to do the same. *Thompson*, at 229-30. An employer can escape an obligation to act in accordance with

its promises by stating in a conspicuous manner that the writing contains simply "general statements" of company policy which are not intended to be part of the employment relationship. *Thompson*, at 230. The existence of the requisite components of an action for wrongful discharge may present questions of fact, or, if the facts are undisputed and lead to only one conclusion, their existence may be decided as a matter of law by the court. *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 105, 864 P.2d 937 (1994); *Swanson v. Liquid Air Corp.*, 118 Wn.2d 512, 521-22, 826 P.2d 664 (1992); *Kohn v. Georgia-Pacific Corp.*, 69 Wn. App. 709, 718-19, 850 P.2d 517, *review denied*, 122 Wn.2d 1010 (1993).

Ms. Birge contends the trial court erred when it summarily dismissed her action for wrongful discharge. She asserts reasonable minds could differ on two questions: (1) Did the document entitled "Employee Responsibilities" create an atmosphere of job security and fair treatment with promises of specific treatment in specific situations? (2) Was her signed "acknowledgment" that the document did not constitute an employment contract effective?

## A
### The Promise of Specific Treatment In Specific Situations

In the decade since the decision in *Thompson v. St. Regis Paper Co., supra,* Washington appellate courts have applied its holding in a multitude of cases. The focus of those cases which considered whether an employer had made enforceable promises was on the language used by the employer.

For example, the court in *Swanson*, at 524, held the plaintiff had the right to rely upon a written memorandum. The memorandum listed misconduct the employer deemed sufficient cause for immediate dismissal without warning, and stated that "'[i]n *all* other instances of misconduct, at least one warning, shall be given.'" (Some italics omitted.) In *Gaglidari v. Denny's Restaurants, Inc.*, 117 Wn.2d 426, 433-35, 815 P.2d 1362 (1991), the manual set forth a review procedure for an employee whose work was unsatisfactory or who failed to abide by the rules. It also listed activities that

provided grounds for immediate dismissal without following the normal review procedures. The court held as a matter of law that the employee had a right to rely upon those statements.

On the other hand, in *Stewart v. Chevron Chem. Co.*, 111 Wn.2d 609, 613-14, 762 P.2d 1143 (1988), the court held as a matter of law that the employer did *not* make a definite promise when it distributed a written policy which stated that in layoff determinations "consideration *should* be given" to certain factors. (Italics ours.) *Stewart*, at 611. The court determined the language was not mandatory. In *Hill v. J.C. Penney, Inc.*, 70 Wn. App. 225, 852 P.2d 1111, *review denied*, 122 Wn.2d 1023 (1993), the employee handbook stated certain defined conduct would result in immediate discharge, and violation of other rules "may" result in termination. The defendant discharged plaintiff without warning for a reason which was not among those listed as cause for immediate dismissal. The court held the handbook language permitted discretion on the part of the employer, and, therefore, the employer had not promised to give a prior warning prior to discharge.

■ Here, Fred Meyer's "Employee Responsibilities" form was a general policy statement under which the company retained its discretion to terminate employees at will. While Fred Meyer promised immediate discharge for certain defined misconduct, it reserved the right to fire without warning for other reasons "which [are] determined by the company to be of an equally serious nature". The trial court properly determined as a matter of law that Fred Meyer had not promised "specific treatment", *i.e.*, a warning, in situations which fell outside the defined reasons for immediate discharge.

## B

### JUSTIFIABLE RELIANCE

■ Even if we agreed with Ms. Birge on the first issue, Fred Meyer contends she had no right to rely on any promise made. An employer can escape an obligation to act in accordance with its promises by stating in a conspicuous manner that it does not intend the promises to be part of the employment

relationship. *Thompson*, at 230. *See also Messerly v. Asamera Minerals, (U.S.) Inc.*, 55 Wn. App. 811, 816, 780 P.2d 1327 (1989). Fred Meyer asserts it did just that by including in the "Employee Responsibilities" form a written acknowledgment, signed by the employee, that the form "[did] not constitute an employment contract".

Ms. Birge argues "employment contract" is inherently ambiguous. She relies on *Swanson*, which states at page 537: "The meaning of the term 'contract of employment' is manifestly unclear, because . . . the terminable at will employee *has* an employment contract — it is simply one that may be ended at any time for any reason." This quote must be read in the context of the facts presented in *Swanson*. There, the disclaimer was unsigned and appeared in a benefits manual; the company argued it applied to the subsequent "Memorandum of Working Conditions". Here, Fred Meyer seeks to enforce a disclaimer which is signed by Ms. Birge and is on the same page as the language upon which she now relies. In these circumstances, "employment contract" is manifestly clear. The acknowledgment provided reasonable notice to Ms. Birge *not* to rely to her detriment on anything contained in the form.

Finally, we are aware that Ms. Birge has asserted facts which, if established, would lead to a conclusion Fred Meyer acted in bad faith when it discharged her. However, employer bad faith is irrelevant to the determination of whether an otherwise terminable-at-will employee has a cause of action for wrongful discharge. *Thompson*, at 227-28, specifically rejected cases from other jurisdictions which imply a covenant of good faith and fair dealing in the employer-employee relationship.

Affirmed.

MUNSON and SCHULTHEIS, JJ., concur.

Review denied at 124 Wn.2d 1020 (1994).