914 P.2d 102 (1996)
81 Wash.App. 163
Joe M. WLASIUK, Respondent,
v.
WHIRLPOOL CORPORATION, a Delaware corporation, Appellant. and
Louis Fred Huggins, Jr. and Jane Doe Huggins, a marital community, Defendants.
No. 33651-7-I.
Court of Appeals of Washington, Division 1.
March 11, 1996.
Publication Ordered April 15, 1996.
*106 David Parsons, Chicago, IL, Stephen Rummage, Seattle, for Appellant.
Marilyn Endriss, Seattle, for Respondent. *103 *104
*105 ELLINGTON, Judge.
Joe Wlasiuk began working for Whirlpool Corporation in 1976. In 1989, he was fired for insubordination. Wlasiuk sued for wrongful discharge based on the company's employee handbook; the jury returned a verdict in his favor. Whirlpool filed this *107 appeal, and Wlasiuk cross-appealed. We affirm.

I. TIMELINESS OF APPEAL
In earlier proceedings before this court, Wlasiuk moved to dismiss Whirlpool's appeal as untimely. A panel of this court declined to dismiss, holding that:
A judgment on the merits is final and appealable even though the amount of attorney fees to be awarded to a prevailing party remains unresolved[;]
....
The "Amended Final Judgment" of September 24 was not an order amending the judgment pursuant to a timely motion under CR 59[; but]
....
Under Franz v. Lance, 119 Wash.2d 780, 836 P.2d 832 (1992), an appeal [from the amended judgment and from the order awarding attorneys fees] filed on October 22 brought the July 30 judgment up for review pursuant to RAP 2.4(b).
Wlasiuk v. Whirlpool Corp., 76 Wash.App. 250, 253, 258-59, 884 P.2d 13 (1994).
Wlasiuk now argues that the appeal should be dismissed because Whirlpool failed to assign error to any issue decided by the Amended Final Judgment entered September 24, 1993, by the Order Awarding Attorneys' Fees to Plaintiff entered October 20, 1993, or by the trial court's October 20 oral ruling, in spite of Whirlpool's indication in the notice of appeal that these would be issues on appeal. Wlasiuk therefore claims that this court does not have jurisdiction to decide Whirlpool's appeal because Whirlpool has not assigned error to any issue decided by the rulings from which the appeal was timely.
To permit Whirlpool to proceed with its appeal when no error has been assigned to any issue relating to the award of attorney fees could invite abuse that will further "encourage protracted litigation" and "delay of the expeditious collection and enforcement of judgments," the precise issues which concerned this court in our first decision in this case. See Wlasiuk, 76 Wash.App. at 261, 884 P.2d 13. However, given this court's earlier decision in this case, and particularly given the decision of the Supreme Court in Franz v. Lance, we consider Whirlpool's appeal.

II. FACTS
Because of the nature of the issues raised, some discussion of the facts is necessary. Joe Wlasiuk began working for Whirlpool Corporation in 1976. In the mid-1980's, Wlasiuk received a "Whirlpool Corporate Salaried Employees Handbook." The handbook included a section entitled "The System Works," in which the president and chief operating officer of Whirlpool emphasized Whirlpool's commitment to ethical behavior. The handbook section on ethics was consistent with the Whirlpool company ethic Wlasiuk had learned previously; he was taught that ethical treatment of dealers was paramount. The handbook also included provisions relating to discipline and termination procedures.
On Friday, January 27, 1989, Wlasiuk met with one of his dealers, Bill Long. Long told Wlasiuk that he had information which could affect Whirlpool, but Long did not want it known that he was the source of the information. Wlasiuk told Long he would "honor his confidentiality." Long said that a second dealer had found a Whirlpool price sheet for appliance dealer Jack Roberts, and that some of Jack Roberts' prices were lower than those given by Whirlpool to other dealers. Long refused to identify the dealer who had found the price sheet.
Wlasiuk immediately called his supervisor, Fred Huggins, who wanted to know what dealer had given him the information. Wlasiuk told Huggins that he had promised not to divulge the dealer's name. Huggins then said that unless Wlasiuk revealed the name of the dealer, he would be placed on probation. Wlasiuk declined to breach his promise to the dealer, believing that to do so would destroy the trust with the dealer which was essential to his job.
Later that day, Wlasiuk went to the office to meet with Huggins. The meeting concluded with Wlasiuk declining to violate his promise to the dealer. Huggins then suspended Wlasiuk, followed him to his home, and removed Whirlpool materials from Wlasiuk's *108 home office. Huggins instructed Wlasiuk not to contact any dealers or any Whirlpool personnel.
On the following Monday morning, Huggins called Bill Long and learned that Long was the dealer who told Wlasiuk about the missing price sheet. Long confirmed that he had asked Wlasiuk not to reveal his name. Long again refused to reveal the name of the dealer with the price sheet. Wlasiuk met with Huggins the next day to help Huggins determine which dealer actually had the price list. For the next few days, Wlasiuk stayed around home because he was told by someone "from Corporate ... to be available."
On Friday, February 3, Wlasiuk went to the office expecting to meet with someone from Whirlpool's Human Resources Department. Instead, he was told that he was terminated. At the time of his termination, Wlasiuk was 50 years old, had worked for Whirlpool for over 12 years, and was the top retail sales territory manager in the Seattle office.
Wlasiuk sued Whirlpool and Huggins, claiming age discrimination, wrongful termination in violation of public policy, breach of contractual and/or promissory obligations under the employee handbook, and, against Huggins only, tortious interference with a business relationship. The claims against Huggins were dismissed on summary judgment. The remaining claims were tried to a jury. At the close of Plaintiff's case, the trial court dismissed the age discrimination claim. The jury then returned a verdict in favor of Wlasiuk on his claim of wrongful discharge under the employee handbook, but in favor of Whirlpool on the claim of discharge in violation of public policy. Each party appealed.

III. EMPLOYEE HANDBOOK CLAIM
Whirlpool argues the jury's verdict on Wlasiuk's handbook claim is not supported by substantial evidence, because the handbook did not promise specific treatment in specific situations, and because, if the handbook did make binding promises, Wlasiuk did not rely upon them and Whirlpool did not breach them. Whirlpool further argues that the handbook contained an effective disclaimer.
An appellate court may overturn a jury's verdict only if the verdict was not supported by substantial evidence. Burnside v. Simpson Paper Company, 123 Wash.2d 93, 107-08, 864 P.2d 937 (1994). The court may not substitute its judgment for that of the jury as long as there is evidence which, if believed, would support the verdict. Id. at 108, 864 P.2d 937; Retail Clerks Health & Welfare Trust Funds v. Shopland Supermarket, Inc., 96 Wash.2d 939, 943, 640 P.2d 1051 (1982). The record must contain a sufficient quantity of evidence to persuade a rational, fair-minded person of the truth of the premises in question. See Bering v. Share, 106 Wash.2d 212, 220, 721 P.2d 918 (1986).
Generally, unless an employment contract specifies the length of time during which an employee will be employed, either party may terminate the contract at any time, for any reason. Burnside, 123 Wash.2d at 104, 864 P.2d 937; Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 223, 685 P.2d 1081 (1984). However, an employee handbook or manual may modify the terminable-at-will relationship if it creates an atmosphere of job security and fair treatment by promising specific treatment in specific situations, thereby inducing the employee to remain on the job and not seek other employment. Thompson, 102 Wash.2d at 230, 685 P.2d 1081; Gaglidari v. Denny's Restaurants, Inc., 117 Wash.2d 426, 433, 815 P.2d 1362 (1991).

A. Disclaimer
Where an employee handbook promises specific treatment in specific situations, an employer may disclaim any intent to be bound by the handbook, and if such a disclaimer is effectively communicated, employees may not justifiably rely upon the handbook provisions. See Birge v. Fred Meyer, Inc., 73 Wash.App. 895, 900-01, 872 P.2d 49 (1994), review denied, 124 Wash.2d 1020, 881 P.2d 253 (1994). Therefore, we first consider whether Whirlpool's disclaimer effectively communicated that Whirlpool did not intend to be bound by its handbook.
*109 At minimum, a "disclaimer must state in a conspicuous manner that nothing contained in the handbook, manual, or similar document is intended to be part of the employment relationship and that such statements are instead simply general statements of company policy." Swanson v. Liquid Air Corp., 118 Wash.2d 512, 527, 826 P.2d 664 (1992). A disclaimer also must be effectively communicated to the employee, who must have reasonable notice that the employer is disclaiming an intent to be bound by what appear to be promises. Whatever the language, the effect of a disclaimer may be negated by inconsistent representations and practices. The disclaimer must be considered in light of the surrounding circumstances, including the parties' representations and conduct. The effect of a disclaimer in an employee manual is a question of fact. Swanson, 118 Wash.2d at 528-34, 826 P.2d 664.[1]
Whirlpool's disclaimer was as follows:
Please note:
This booklet is a general outline of Whirlpool Corporation's Corporate Administration and Marketing Group personnel policy and certain employee benefit programs. Additional policies and benefits may apply to you which are not included in this summary. In many instances the policy matters summarized in this booklet are covered by specific detailed policy statements. Details of employee benefits are specified by the various legal documents providing for such benefits. Strict interpretation of company policies and benefits as they pertain to individual cases will, in all cases, be based upon actual underlying policy statements and plan documents and must be the concern of your supervisor and the Human Resources Department. Nothing contained herein shall be deemed to constitute all of the conditions of employment or a contract of employment or to confer or modify any specific employee benefit.
The disclaimer's statement that nothing in the handbook "shall be deemed to constitute ... a contract of employment" is "manifestly unclear," because even terminable-at-will employees have a contract of employment. See Swanson, 118 Wash.2d at 537, 826 P.2d 664. The statement "nothing contained herein shall be deemed ... to confer or modify any specific employee benefit" is ambiguous in a paragraph which also states that the booklet is only a "general outline" and that "additional benefits and policies may apply." In context, these statements in the disclaimer could reasonably be read to mean that the handbook is incomplete and that other policies or benefits may be found elsewhere. Wlasiuk testified that he did not recall reading the disclaimer, nor had company officials called his attention to it. He had not signed anything acknowledging the disclaimer.[2]
The question of the effectiveness of the disclaimer was submitted on proper instruction to the jury; under the circumstances, sufficient evidence supports the finding implicit in the verdict that the disclaimer was ineffective.

B. Handbook Provisions
Whether an employee manual contains a promise of specific treatment in specific situations, whether the employee justifiably relied upon the promise, and whether the employer breached the promise *110 are questions of fact for the jury. Burnside, 123 Wash.2d at 104-5, 864 P.2d 937. These questions may be decided as a matter of law only if reasonable minds could reach but one conclusion; otherwise, an appellate court may overturn the jury's verdict only if it was not supported by substantial evidence. Burnside, 123 Wash.2d at 105-8, 864 P.2d 937.
Wlasiuk argued that Whirlpool breached four promises of specific treatment. First, the handbook stated that "[n]o employee of this company will ever be called upon to do anything in the line of duty that is morally, ethically, or legally wrong." Second, the handbook stated that "[a]ny employee may be suspended without pay and benefits pending investigation for gross misconduct (theft, dishonesty, insubordination, and other similiar [sic] violations of company regulations)." Third, a provision addressing probationary periods for inadequate performance stated that if an employee were placed on probation, "the appropriate Human Resources representative" would interview the employee. Finally, the handbook stated that "[w]hen consideration for any reason is being given to involuntary separation of a salaried employee with 10 or more years of service, prior approval of two officers is secured before any action is taken." Wlasiuk argued that he was terminated for declining to do something unethical break his word to the dealer), and that Whirlpool failed to investigate, to interview him, or to obtain two officers' approval before action was taken against him.
We must determine whether, in the context of this case, any of these sections of the handbook promised specific treatment in specific situations, and whether there is substantial evidence that such promise was breached. The verdict form did not require the jury to specify which sections constituted promises breached by Whirlpool. Therefore, if we find substantial evidence of a breach of any promise of specific conduct, the verdict will be sustained. See McCluskey v. Handorff-Sherman, 125 Wash.2d 1, 11, 882 P.2d 157 (1994); Burnside, 123 Wash.2d at 108, 864 P.2d 937.
We turn first to the handbook provisions regarding procedures for termination. The handbook requires a Human Resources investigation before an employee is terminated for gross misconduct ("Any employee may be suspended ... pending investigation for gross misconduct...."). Former Whirlpool sales division general manager Tom Streight testified that, if someone were to be terminated immediately, the procedure was to relieve the employee of duties and initiate a Human Resources investigation, which would include an interview with the affected employee. Ed Dunn, Vice President for Human Resources, testified he would expect Human Resources to do a "thorough and complete investigation" if an employee claimed that he was being terminated for refusing to violate an ethical principle. He testified that ethical issues were "very important" at Whirlpool. However, Wlasiuk was not interviewed, and Human Resources conducted no investigation.
Whirlpool argues that it conducted an adequate investigation because Wlasiuk's conduct amounted to unmistakable insubordination, and Huggins fired Wlasiuk only after determining that Wlasiuk would not divulge the name of the dealer. Given the company's previous practice under this handbook section, however, the jury could reasonably conclude that Wlasiuk was entitled to an investigation by someone other than Huggins, that such an investigation would include an interview, and that Huggins was obligated to communicate honestly with Whirlpool officials about the facts of the situation. See Stender v. Twin City Foods, Inc., 82 Wash.2d 250, 254, 510 P.2d 221 (1973) (what is meant by the language of a contract is determined in part by consideration of the subsequent acts and conduct of the parties to the contract). No one other than Huggins talked to Wlasiuk before he was fired, Human Resources conducted no investigation, and Huggins' communication with other Whirlpool officials was at best incomplete.
Wlasiuk also claimed Whirlpool breached its promise that before an employee with 10 or more years of service was "involuntarily separated" from the company, the approval of two corporate officers would be secured. A letter from Human Resources *111 Vice President Marty Goldrick to President Hank Bowman and Dunn, later cosigned by Bowman and Dunn, reflected the approval required by the handbook. The letter implied that Wlasiuk had spoken to the dealer who actually found the Jack Roberts' price sheet. Nothing in the letter set forth the reason Wlasiuk refused to name the dealer.
Goldrick, who sent the letter, testified that he did not prepare it. He could not recall any discussions relating to the letter. He knew nothing about Wlasiuk's termination other than what was in the letter, and he had made no attempt to investigate. He had no idea that Wlasiuk refused to disclose the dealer's name because of the promise he had made to the dealer. Similarly, the other two corporate officers who approved Wlasiuk's termination did not know why Wlasiuk had refused to reveal the name of the dealer, nor did those officers undertake an investigation. They relied upon what they were told by a subordinate, Michael Osborne, who was Whirlpool's human resources manager and who had prepared the 10-year letter for Goldrick's signature.
Although Osborne knew why Wlasiuk had refused to name the dealer, he mistakenly believed, based upon what Huggins had told him, that Wlasiuk actually knew which dealer had the price sheet. He acknowledged he never talked to Wlasiuk. Yet Huggins and others confirmed the company's policy of undertaking an investigation before termination of an employee who had been with the company for 10 years. Dunn emphasized that he would expect a thorough investigation before an employee was terminated for refusing to violate an ethical principle, and that he would require a "thorough assessment" before signing an approval letter. He believed that in fact Wlasiuk had been interviewed by Human Resources: "I can't imagine I would have signed [the approval] letter had the process been absent a discussion between one of the Human Resource people and Mr. Wlasiuk."
A jury could reasonably conclude from the evidence that the officers' "approval" did not satisfy the handbook requirement.
Whether an employee manual contains promises of specific treatment in specific situations and whether the employer breached the promises are questions of fact for the jury. The jury in this case concluded that Whirlpool promised specific treatment in specific situations and that it breached those promises. Although reasonable minds might differ with those conclusions, the record contains a sufficient quantity of evidence to persuade a rational, fair-minded person that Whirlpool breached its promises of an investigation and approval of two corporate officers.
Having concluded there were at least two grounds upon which the jury could have concluded a breach occurred, we do not address Wlasiuk's other arguments regarding the handbook.

C. Reliance
We next consider whether sufficient evidence supports the finding that Wlasiuk relied upon the promises made in the employee manual. An employee must have relied upon a promise of specific treatment in specific situations for the promise to be enforceable. Burnside, 123 Wash.2d at 104, 864 P.2d 937. The employee must show that he was induced to remain on the job and not seek other employment. Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 230, 685 P.2d 1081 (1984).
Wlasiuk testified he did not seek other employment during the 12 years he worked for Whirlpool. He expressed the pride he felt working for Whirlpool because of its high ethical standards. His testimony supports a rational inference that he was induced by the handbook provisions to remain on the job and not seek other employment. See Bering v. Share, 106 Wash.2d 212, 220, 721 P.2d 918 (1986).
The jury also could have concluded from the evidence that Wlasiuk relied upon the procedural promises of the handbook in choosing his course of action after the confrontations with Huggins. Wlasiuk believed "top management" and "people from Corporate" would investigate and resolve the impasse. Whether an employee justifiably relied upon promises of specific treatment in specific situations is a question of fact for the *112 jury. The jury's conclusion here is supported by substantial evidence.

IV. JURY INSTRUCTIONS
Whirlpool next argues that the trial court erred in giving Instruction 15. Instruction 15 advised the jury that, in determining whether Whirlpool breached its obligations under the handbook, the jury could not substitute its judgment for Whirlpool's in determining whether Wlasiuk should be discharged, unless the jury concluded that the decision to discharge Wlasiuk was arbitrary, capricious, or illegal; was not based on facts supported by substantial evidence; or was not based on facts reasonably believed by Whirlpool to be true.
Jury instructions are reviewed under an abuse of discretion standard. Petersen v. State, 100 Wash.2d 421, 441, 671 P.2d 230 (1983). A trial court's refusal to give a requested instruction warrants a reversal only if a party cannot argue its theory of the case or if the instructions, when read as a whole, do not inform the jury of the applicable law. Id.
In Washington, when a contract provides specific grounds for dismissal, an employee may be immediately dismissed only for "just cause." Gaglidari v. Denny's Restaurant's, Inc., 117 Wash.2d 426, 438, 815 P.2d 1362 (1991). "[A] discharge for `just cause' is one which is not for any arbitrary, capricious, or illegal reason and which is based on facts (1) supported by substantial evidence and (2) reasonably believed by the employer to be true." Baldwin v. Sisters of Providence in Washington, Inc., 112 Wash.2d 127, 139, 769 P.2d 298 (1989). Although the employer may not make arbitrary determinations of just cause,[3] whether the plaintiff actually committed the violation is irrelevant; the question is whether "at the time plaintiff was dismissed defendant reasonably, in good faith, and based on substantial evidence believed plaintiff" had committed the violation. Gaglidari, 117 Wash.2d at 438, 815 P.2d 1362.
Whirlpool claims Instruction 15 incorrectly allowed the jury to determine whether its decision to discharge Wlasiuk was arbitrary and capricious. Whirlpool argues the jury instead should have been instructed that it must defer to Whirlpool's decision to terminate Wlasiuk unless the reason given for the termination, in this case, insubordination, was an arbitrary and capricious reason. Whirlpool's interpretation of the law is incorrect, which is apparent when applied to facts in other cases.
For example, in Gaglidari, the plaintiff was discharged for fighting on company premises. Whether she was actually fighting was irrelevant; the question instead was whether the defendant reasonably, in good faith and based upon substantial evidence, believed at the time the employee was discharged that she had been fighting. Id. at 438, 815 P.2d 1362. If Whirlpool's argument were correct, the question in Gaglidari would have been whether fighting was a reasonable basis for terminating an employee.
Similarly, in this case, the issue was not whether insubordination was a legitimate basis for discharging Wlasiuk. Rather, the question was whether Wlasiuk was discharged because Whirlpool reasonably, in good faith, and based upon substantial evidence, believed that Wlasiuk was insubordinate. Instruction 15 was not erroneous.
Whirlpool claimed the handbook obliged Wlasiuk to bring his ethical concerns to the attention of top management, which he did not do, and that the trial court erred when it gave Instruction 14, to the effect that the burden was upon Whirlpool to prove Wlasiuk breached his obligations under the handbook. Whether the handbook imposed such an obligation on Wlasiuk is debatable; the language in the handbook on that point is discretionary ("should"). In addition, on the first day of this conflict, Huggins instructed Wlasiuk to have no contact with Whirlpool personnel, essentially making compliance impossible.
In any event, the instruction was correct; Wlasiuk's breach of a contractual duty was an affirmative defense, not a condition *113 precedent to Whirlpool's performance. The burden of proof is upon defendant to prove an affirmative defense based upon plaintiff's nonperformance under the contract. Wise v. Farden, 53 Wash.2d 162, 169, 332 P.2d 454 (1958). The burden would have been on Wlasiuk to prove his performance under the contract only if his performance were a condition precedent. See Walter Implement, Inc. v. Focht, 107 Wash.2d 553, 557, 730 P.2d 1340 (1987). The trial court did not err when it instructed the jury that the burden was upon Whirlpool to establish that Wlasiuk violated the handbook provisions.

V. CROSS APPEAL
On cross appeal, Wlasiuk argues the trial court erred by instructing the jury that Wlasiuk's public policy claim required him to establish that Whirlpool violated the letter or purpose of the fair trade practices laws. Wlasiuk had objected to pricing strategies adopted by Huggins and his predecessor, which favored certain dealers and which Wlasiuk believed violated fair trade practices; he argued his termination was motivated by his "public policy" objections. Wlasiuk argues he was required only to establish that Whirlpool reasonably appeared to violate the fair trade practices laws or that he reasonably believed Whirlpool violated the fair trade practices laws. Wlasiuk claims the instruction required him to prove that Whirlpool had actually violated the fair trade practice laws.
What constitutes a contravention of public policy is not limited to actual violations of laws. However, a plaintiff must show either an actual violation, or that the purpose of the law was violated. See Dicomes v. State, 113 Wash.2d 612, 620, 782 P.2d 1002 (1989); Bott v. Rockwell International, 80 Wash.App. 326, 908 P.2d 909 (1996).[4] The trial court's instruction was correct.
Finally, Wlasiuk argues that the trial court abused its discretion when it excluded Wlasiuk's expert witness on fair trade practices. Under Evidence Rule 702,
[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
The admission of expert testimony is within the discretion of the trial court. Personal Restraint of Young, 122 Wash.2d 1, 57, 857 P.2d 989 (1993). The court must decide if the witness qualifies as an expert and if the testimony would be helpful to the trier of fact; the trial court's decision will not be disturbed unless the court abused its discretion. Id. A trial court abuses its discretion if its decision is manifestly unreasonable or is based upon untenable grounds or reasons. Burnside, 123 Wash.2d at 107, 864 P.2d 937.
Wlasiuk attempted to prove that Whirlpool's pricing strategies violated the Robinson-Patman Act. The trial court based its decision to exclude the testimony of attorney William Erxleben upon the parties' agreement that Whirlpool's Basic Guides, the document on fair trade practices prepared by Whirlpool's law department, was a clear and accurate statement of that law. The court reasoned that if Whirlpool employees could understand the Basic Guides, the jury could also. Furthermore, the judge expressed her confidence in the abilities of counsel to argue to the jury on the law. Her decision to exclude Wlasiuk's expert was not based upon untenable or manifestly unreasonable grounds.

VI. CONCLUSION
The jury concluded that Whirlpool made specific promises in its employee handbook, that Wlasiuk relied upon those promises, and *114 that Whirlpool breached those promises. The jury was properly instructed, and sufficient evidence supports the jury's verdict. The decision of the trial court is affirmed. Plaintiff is awarded fees on appeal; Plaintiff is directed to comply with RAP 18.1(d).
COLEMAN and BECKER, JJ., concur.
NOTES
[1] Whirlpool relies upon Messerly v. Asamera Minerals, Inc., 55 Wash.App. 811, 780 P.2d 1327 (1989). Based upon Stewart v. Chevron Chemical Company, 111 Wash.2d 609, 762 P.2d 1143 (1988), the Messerly court held that the construction and legal effect of a disclaimer in an employee manual was a question of law. Messerly, 55 Wash.App. at 816, 780 P.2d 1327. The Supreme Court, however, rejected that contention in Swanson v. Liquid Air Corp., 118 Wash.2d 512, 529, 826 P.2d 664 (1992). The Swanson court explained that in Stewart the effect of the language in the manual was a question of law because reasonable minds could not differ.
[2] In a recent case, the Court of Appeals, Division Three, found that a statement indicating that the company's policies did not constitute an employment contract was not manifestly unclear when other circumstances supported its meaning. Birge v. Fred Meyer, Inc., 73 Wash.App. 895, 901, 872 P.2d 49 (1994), review denied, 124 Wash.2d 1020, 881 P.2d 253 (1994). However, in Birge, the disclaimer was on the same page as the statement of policies on which the employee claimed to have relied, and the employee was required to sign on that same page, acknowledging that the policies did not constitute an employment contract. Id.
[3] Baldwin, 112 Wash.2d at 138, 769 P.2d 298.
[4] To state a cause of action for wrongful discharge based upon contravention of a clear mandate of public policy, an employee need only plead and prove that a legislatively or judicially recognized public policy may have been contravened. Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 232, 685 P.2d 1081 (1984). At trial, however, if the employer meets its burden and avoids a directed verdict by evidence that the dismissal was for reasons other than those alleged by the employee, the plaintiff must at least prove that the employer violated the purpose of the law. See id.