[No. 34787-0-I.    Division One.    October 30, 1995.]

DOUGLAS DROBNY, *Appellant*, v. THE BOEING
COMPANY, *Respondent*.

*Douglas Drobny*, pro se.
*Joan C. Clarke* and *Perkins Coie*, for respondent.

KENNEDY, A.C.J. — Douglas Drobny appeals a summary judgment dismissing his claim against The Boeing Company for breach of an implied employment contract. Boeing fired Drobny after he admitted to calculating the salaries of coemployees using Boeing financial cost data, to which he had access by virtue of his job as a systems analyst. Drobny failed to raise a genuine issue of material fact concerning whether Boeing, through Administrative Procedure 580 ("AP 580"), made promises to Drobny of specific treatment in specific circumstances regarding employee discipline. The trial court did not abuse its discretion in denying Drobny's motion for a continuance of the summary judgment hearing. Accordingly, we affirm.

## FACTS

In November 1991, Boeing's labor relations manager,

Fred Holtman, received a phone call from an employee who claimed that Drobny had access to some confidential information about her, including her salary. Drobny was a systems analyst who had worked for Boeing since 1980, when he was hired as a cost accountant. Holtman asked Boeing security to investigate the complaint about Drobny.

As a result of the investigation, Drobny acknowledged that he had used his office computer to access Boeing financial cost data, and that he had calculated coworkers' salary information from that data. He also acknowledged that the information was confidential and privileged, and that he had no work-related reason for calculating coworkers' salaries.

Holtman convened a group of managers and human resource personnel ("the Board") to examine Drobny's conduct. The Board concluded that Drobny had engaged in serious misconduct by misusing information. The Board considered Drobny's acts to be a violation of trust and concluded that he could no longer be trusted with access to "limited" Boeing information.[1]

The Board also considered Drobny's discipline history. In 1985, Boeing suspended Drobny for one week because he was found to have inaccurately reported his work hours. In both 1990 and 1991, he was verbally reprimanded for improper personal use of Boeing's E-mail system.

Drobny was discharged on February 14, 1992. The discharge notice describes the Board's position that Drobny violated company trust regarding access to information via computer. The notice also references his prior disciplinary problems.

In September 1992, Drobny filed suit, claiming that he was terminated in violation of an implied employment contract. Drobny argued that under AP 580 he had an implied contract which included the following provisions: (1) he would receive progressive discipline, (2) he could only be terminated for cause, and (3) his previous

---

[1]"Limited" information refers to personnel and salary information.

disciplinary actions would be purged after one year and not be considered in the event of future discipline decisions.

Boeing filed a motion for summary judgment, raising the same arguments now raised on appeal. Drobny initially responded with a motion to continue the hearing on the summary judgment motion. Drobny requested the continuance because the discovery he sought would be "vital" to his ability to respond to summary judgment. Counsel for Drobny explained that she requested the continuance to allow for any difficulties in scheduling discovery and resolving discovery disputes. The trial court denied the continuance.

The trial court granted Boeing's summary judgment motion. This timely appeal followed.

### DISCUSSION

### I

### MOTION FOR CONTINUANCE

■ The decision to continue a summary judgment hearing is left to the discretion of the trial judge. *See Pelton v. Tri-State Memorial Hosp., Inc.*, 66 Wn. App. 350, 356-57, 831 P.2d 1147 (1992); *Turner v. Kohler*, 54 Wn. App. 688, 693, 775 P.2d 474 (1989). To gain a continuance, a party must establish the relevant evidence to be obtained through discovery and that a good reason exists to explain any delay in obtaining the evidence. *Pelton*, 66 Wn. App. at 356.

To support the motion for a continuance, Drobny asserted that the discovery sought was "vital" to his ability to respond to the summary judgment motion. Clerk's Papers at 282. Drobny presented no specific reason why the evidence was "vital." Under these circumstances,

the trial court did not abuse its discretion in denying the motion for continuance. *See Pelton*, 66 Wn. App. at 356.

## II

### IMPLIED CONTRACT

■ Where an employee agrees to work for an undefined period of time, Washington courts consider the employment relationship terminable at will by either the employee or the employer. *See Greaves v. Medical Imaging Sys., Inc.*, 124 Wn.2d 389, 393, 879 P.2d 276 (1994); *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 233, 685 P.2d 1081 (1984). However, if an employer issues an employment handbook or manual, these materials might create an implied modification of the at-will employment contract. *Thompson*, 102 Wn.2d at 233. This is true if the manual or handbook contains promises that the employer will provide the employee specific treatment under specific circumstances or in specific situations. *Thompson*, 102 Wn.2d at 233. This rule rests on the principle that by using a manual or handbook, an employer secures promises from the employees which create a loyal, orderly and cooperative work force, such that the employer should be equally bound to its promises to the employee, which are designed to create an atmosphere of job security and fair treatment. *Thompson*, 102 Wn.2d at 229-30. By making these promises, the employer creates an expectation in the employee, "and thus an obligation of treatment in accord with those written promises." *Thompson*, 102 Wn.2d at 230. If, however, the manual terms as written amount only to general policy statements, then the manual will not create an implied contract. *Thompson*, 102 Wn.2d at 230-31.

■ Whether or not an employer has made a promise specific enough to create an obligation and justify an employee's reliance thereon is a question of fact. *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 104-05, 864 P.2d 937 (1994). Only if reasonable minds could not differ in

resolving this issue should a trial court decide it as a matter of law.[2] *Burnside*, 123 Wn.2d at 105.

## A. Progressive Discipline

AP 580 provides in relevant part:

> The disciplinary procedures described in this document are intended to correct unacceptable conduct and to avoid its repetition. When administering discipline, consideration is given to the seriousness of the offense, the intent and attitude of the individual, and the environment in which the offense took place.

Clerk's Papers at 23.

> Use this procedure when an employee's conduct violates the published Company Rules, requirements for safeguarding classified information, or reasonable, common sense rules of conduct . . . .

Clerk's Papers at 24.

> The disciplinary actions supervisors take are to be governed by progressive discipline . . . . This process includes the following measures:
>
> 1. Written warning.
>
> 2. Suspension.
>
> 3. Dismissal.
>
> 4. Other corrective action (demotion, reassignment, and so on).
>
> It is not always necessary, however, that the discipline process commence with a written warning or include every step. Some acts, particularly those that are intentional or serious, warrant more severe discipline on the first or subsequent offense.
>
> For acts warranting severe discipline, such measures as

---

[2]Upon review of such a decision, the ordinary standard of review for summary judgment applies. *See Swanson v. Liquid Air Corp.*, 118 Wn.2d 512, 518-19, 826 P.2d 664 (1992).

dismissal, suspension without pay, demotion and/or reassignment may be appropriate, even though no prior warning has been given. The discipline process for other, less serious violations will normally begin with a written warning and proceed to more severe measures for subsequent violations. In all situations, consideration will be given to the seriousness of the offense, the intent and attitude of the individual, and the environment in which the offense took place.

Clerk's Papers at 27.

Dismissal is appropriate when efforts at corrective action fail or the seriousness of the violation or problem warrants it.

Clerk's Papers at 29.

Drobny argues that these portions of AP 580 entitled him to progressive discipline.

Where an employment manual requires that an employee receive at least one warning prior to being dismissed, courts have found a question of fact as to the existence of a promise of "progressive discipline." *See Burnside*, 123 Wn.2d at 105 n.8; *Swanson v. Liquid Air Corp.*, 118 Wn.2d 512, 523-24, 826 P.2d 664 (1992). In *Burnside*, the manual stated that an employee could be immediately terminated for various transgressions "if previous warnings have been given and employee has had the opportunity to resign." *Burnside*, 123 Wn.2d at 105 n.8. In *Swanson*, the manual stated a finite list of misconduct that would result in immediate termination, and went on to provide that "[i]n all other instances of misconduct, at least one warning, shall be given." *Swanson*, 118 Wn.2d at 524.

In contrast, where the employment manual gives the employer discretion in applying the discipline procedures, courts have held as a matter of law that the manual does not provide a promise of specific treatment in a specific circumstance. In *Stewart v. Chevron Chem. Co.*, 111 Wn.2d 609, 613, 762 P.2d 1143 (1988), the employee manual suggested, regarding layoff decisions, that

management "should" consider job performance and experience when making its decision. The court deemed this language merely advisory and, therefore, insufficient to imply a contract based on specific promises of treatment. *Stewart*, 111 Wn.2d at 614; *see also Hill v. J.C. Penney, Inc.*, 70 Wn. App. 225, 234-35, 852 P.2d 1111, (employee manual not explaining or promising any discharge procedures cannot form basis of implied contract), *review denied*, 122 Wn.2d 1023 (1993).

In *Birge v. Fred Meyer, Inc.*, 73 Wn. App. 895, 872 P.2d 49, *review denied*, 124 Wn.2d 1020 (1994) the court examined a policy stating that certain violations, including dishonesty and other unspecified employment conduct which the company considered equally serious, would result in termination without warning, and that other types of conduct would result in disciplinary action, but usually in termination only after a prior warning. *Birge*, 73 Wn. App. at 897. Fred Meyer thereby reserved to itself the discretion to fire employees at will. *Birge*, 73 Wn. App. at 900. Because the company retained discretion, Birge could not establish any factual issues regarding the existence of a promise for specific treatment under specific circumstances, i.e., the requirement of a warning. *Birge*, 73 Wn. App. at 900.

In adopting AP 580, Boeing retained discretion to determine on a case-by-case basis whether conduct would be deemed serious enough to merit dismissal without recourse to progressive discipline. Boeing's policy more closely resembles the policies examined in *Stewart* and *Birge* than the policies examined in *Burnside* and *Swanson*. AP 580 is not a promise of specific treatment under specific circumstances. No implied contract existed between Boeing and Drobny. The trial court did not err in so ruling as a matter of law.

## B. Termination for Cause

Drobny also argues that the same language from AP

580 quoted above suggests that Boeing promised Drobny that he could only be dismissed for cause.

As we have noted, where an employer retains the discretion to decide what types of offenses will be serious enough to merit immediate dismissal, the employer makes no promise of specific treatment. *Birge*, 73 Wn. App. at 900; *contra Burnside*, 123 Wn.2d at 105 n.8 (question of fact as to existence of promise where manual provides for release of an employee "if initiated by the company *for cause"*) (emphasis added).

■ Boeing retained the discretion to decide what behavior would merit dismissal without progressive discipline. AP 580 suggests that intentional or serious misconduct would be particularly likely to lead to immediate dismissal, but does not guarantee either that such misconduct always will lead to dismissal, or that other conduct will not lead to dismissal. At most, Boeing's discipline policy promises that the company will not discharge employees without prior warning unless *the company* believes the conduct at issue to be "serious" or "intentional." As a matter of law, this cannot amount to a promise of specific treatment.

Moreover, we do not equate "serious" or "intentional" with "for cause." "For cause" and "just cause" remain terms of art in the employment context, which automatically incorporate a body of case law interpreting those terms. We hold that the words "serious" or "intentional" do not incorporate a promise of termination only "for cause" into an employment manual.[3]

Drobny argues that a question of fact remains as to whether his conduct was serious or intentional, relying on two facts: (1) that Gerald Smith, Drobny's supervisor, testified that Drobny's conduct, standing alone, would not,

---

[3]In *Adler v. Ryder Truck Rental, Inc.,* 53 Wn. App. 33, 765 P.2d 910 (1988), *review denied,* 112 Wn.2d 1013 (1989), *overruled on other grounds by Burnside v. Simpson Paper Co.,* 123 Wn.2d 93, 106, 864 P.2d 937 (1994), the court, without analysis, did appear to equate the word "serious" with "just cause." However, the employer's supervisors apparently used the same terminology. *Adler,* 53 Wn. App. at 35, 37-38.

in his opinion, require dismissal for the first offense, and (2) that Boeing had no rule specifically preventing employees from calculating other employees' salaries.

The unchallenged evidence on summary judgment shows that Boeing retained the discretion to decide what would and would not qualify as serious misconduct.[4] Drobny also acknowledged that he misused accessible information to perform calculations allowing him to ascertain confidential and privileged information concerning other employees' salaries. He acknowledged having no work-related need to access this information. Thus, his actions were clearly intentional. AP 580 states that intentional misconduct is particularly likely to result in dismissal without progressive discipline. Under these circumstances, summary judgment was appropriate.

### C. Consideration of Prior Disciplinary Actions

Drobny argues that AP 580 promises employees that Boeing will not consider corrective action memos more than one year old when making subsequent disciplinary decisions concerning that employee.[5]

Under AP 580, Boeing personnel managers maintain a personnel folder for each employee. Boeing uses a corrective action memo to inform an employee of any disciplinary action Boeing undertakes against the employee. Where the misconduct results in suspension, personnel retains the corrective action memo in the personnel folder for a period of 12 months, along with the suspension notice. The suspension notice documents the date and cause of the suspension, like a payroll form.

AP 580 also describes the responsibilities of the

---

[4]Parenthetically, reasonable minds cannot differ that Drobny's misuse of Boeing limited financial data constituted serious misconduct.

[5]Drobny's argument refers entirely to disciplinary corrective action memos retained in a personnel file. As related to his case, the argument applies only to his 1985 suspension for incorrectly recording his work hours. The verbal reprimands for misuse of the E-mail system were not reduced to corrective action memos.

Discipline Coordinator. This person ensures that personnel workers are familiar with AP 580. The Discipline Coordinator also maintains a separate discipline file of cases involving suspensions and dismissals, and must retain the cases in the file for a minimum of six years.

On its face, AP 580 does not state that Boeing will not consider prior discipline occurring more than one year earlier.[6] Boeing made no promise of specific treatment regarding the use of past discipline, so Drobny has not created an issue of fact as to the existence of an implied contract.

Drobny seeks to supplement the silence of AP 580 with Gerald Smith's deposition testimony that Drobny's conduct, standing alone, would not in his opinion require dismissal for a first offense, and with Drobny's declaration that a supervisor had assured him that the suspension he received in 1985 would be purged after one year, and at that point would be a "done deal," and that Drobny would be "starting over." Smith's testimony is irrelevant, as it was not known to Drobny during his employment—not having heard Smith's opinion before committing the misconduct, Drobny could not rely on it for his understanding of Boeing's disciplinary policies. Drobny's reliance on his supervisor's assurances is equally unavailing. Assuming that this evidence is not inadmissible hearsay, in the absence of a written policy providing promises of specific treatment in specific situations, oral representations by an employee's supervisor are insufficient to establish an enforceable promise. *See Winspear v. Boeing Co.*, 75 Wn. App. 870, 880, 880 P.2d 1010 (1994), *review denied*, 126 Wn.2d 1006 (1995).

In *Winspear*, the plaintiff claimed that a Boeing human resource manager assured him that if he pleaded guilty to fourth degree assault (after being charged with indecent

---

[6]Drobny suggests that Boeing promised not to consider prior discipline action over one year old, no matter how serious or extensive, in making future disciplinary decisions. We find this suggestion unreasonable on its face.

liberties and child rape), he would not be fired. *Winspear*, 75 Wn. App. at 871-72. After pleading guilty and being fired, Winspear argued that the oral representation amounted to a binding promise. The court disagreed, concluding as a matter of law that oral representations are not equivalent to "documented and disseminated" employment manuals. *Winspear*, 75 Wn. App. at 880.[7]

Drobny's supervisors' opinions and assurances cannot obligate Boeing to treat Drobny in a specific fashion regarding the purging of the corrective action memo, where that promise is not found in AP 580. Although AP 580 does say that corrective action memos will be removed from the *personnel* file after 12 months, AP 580 also requires the discipline coordinator to maintain suspensions in a separate *discipline* file for a minimum of six years. The trial court properly granted Boeing summary judgment on this issue.

Affirmed.

GROSSE and AGID, JJ., concur.

Reconsideration denied December 18, 1995.

---

[7]The *Winspear* court based its decision on the language of *Thompson* wherein the court describes promises contained in employment manuals as promises to all employees of specific treatment. This is qualitatively different from one supervisor's representations to one employee. *Winspear*, 75 Wn. App. at 880.