**AIRLINE SUPPORT, INC., Appellant and Cross–Appellee,**

v.

**ASM CAPITAL II, L.P., Appellee and Cross–Appellant.**

Nos. S–13584, S–13593.

Supreme Court of Alaska.

June 29, 2012.

---

Charles E. Tulin, Anchorage, for Appellant/Cross–Appellee.

Allen F. Clendaniel, Sedor, Wendlandt, Evans & Filippi, LLC, Anchorage, for Appellee/Cross–Appellant.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

*OPINION*

CARPENETI, Chief Justice.

## I. INTRODUCTION

A limited partnership based in New York that invests in the claims of unsecured creditors sent a letter to an Alaska corporation offering to purchase one such claim for about one-third of its face value. The letter was addressed to the credit manager and was sent to the corporate offices. Upon receiving the envelope, the Alaska corporation forwarded it unopened to the manager of its accounts receivable department in Georgia. The manager executed the enclosed assignment agreement and returned it back to the limited partnership, which then sent a check in payment for the claim. The Alaska corporation eventually filed suit in superior court to have the agreement set aside. The superior court declined to do so. Because we conclude that there is a genuine issue of fact as to whether the manager of the accounts receivable department had apparent authority to execute the agreement as a matter of law, we reverse and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

Airline Support, Inc. is an Anchorage-based Alaska corporation that provides support services for airlines at the Ted Stevens Anchorage International Airport in Anchorage. On September 15, 2005, Northwest Airlines filed for Chapter 11 bankruptcy in the Southern District of New York. At the time of the bankruptcy filing, Northwest owed Airline Support $62,071. After the filing, Airline Support continued to provide services to Northwest and bill for those services.

ASM Capital II, L.P. invests in the claims of unsecured creditors in domestic bankruptcy cases. ASM monitors bankruptcy filings and offers to purchase claims from bankruptcy creditors at a percentage of their face value. On May 15, 2006, ASM sent Airline Support a letter proposing to purchase Airline Support's bankruptcy claim for $19,862.72, which was 32% of the claim's face value. ASM sent the letter to Airline Support's corporate office in Anchorage, to the attention of "A/R–Credit Manager."[1] The page-long letter read, in pertinent part:

ASM Capital ("ASM") is a firm that invests in the claims of unsecured creditors in domestic bankruptcy cases. The above information refers to an unsecured claim ("Claim") that has been scheduled by Northwest Airlines Corporation in its case filed in the United States Bankruptcy Court for the Southern District of New York, Case. No. 05–17930 ("Case").

ASM is currently buying claims in the Case and is interested in purchasing your Claim:

| | |
|---|---|
| Percentage: | 32.00% (cents on the dollar) |
| Claim Amount: | $62,071.00 |
| ASM Purchase Price: | $19,862.72 |

If you are interested in selling your Claim, you must send ASM, via fax or mail, an executed Assignment of Claim Agreement, a copy of which is attached. ASM reserves the right (i) to review the validity of the Claim; and (ii) to refuse to purchase the Claim for any reason without further notice or obligation. If accepted, payments are typically sent by regular mail within 7 to 10 business days. Alternate payment methods may be available upon request.

With the exception of two closing lines, this is ASM's letter in its entirety.

In response, ASM received a letter on Airline Support letterhead signed by Katie Land, who identified herself as Airline Support's "Accounting Manager." Land lived in Georgia, and remotely acted as Airline Support's "accounts manager" and "bookkeeper." Enclosed with the letter from Land was the executed assignment agreement, dated June 14, 2006. The letter read:

Dear Mr. Corey,

Enclosed you will find the Airline Support, Inc. invoices that were part of the Northwest Airlines bankruptcy filing. The letter you sent to our company listed our claim

---

1. "A/R" stands for "Accounts Receivable."

amount at $62,071.00. We actually have a total amount open of $71,404.00. Copies of all open invoices are attached.

Please contact me if you have further questions regarding this claim. . . .

Regards,

Katie Land

Accounting Manager

Accompanying Land's letter were over 50 pages of invoices relating to Airline Support's claim in the Northwest bankruptcy. In the space provided on the assignment agreement, Land had handwritten "$71,404.00" as the amount of Airline Support's claim in the bankruptcy proceedings.[2] Preprinted on the assignment agreement was the purchase price for the assignment of the claim, $19,862.72. On the "Name/Title" line of the signature block, Land had written "Katie Land/Acct. Mng." The executed assignment agreement contained a clause stating that "the individuals whose signatures appear below hereby expressly represent that they have the authority to bind the party for which they sign this agreement." The assignment agreement also included an attorney's fee provision requiring Airline Support to reimburse ASM for all of its expenses in connection with enforcing the agreement, "including without limitation, reasonable attorneys' fees at the trial and appellate levels."

Following receipt of the executed assignment agreement, ASM filed a proof of claim in bankruptcy court against debtor Northwest on June 26, 2006, indicating that Airline Support had assigned its claim to ASM. On June 27, 2006, ASM sent a check to Airline Support for $19,862.72 in exchange for Airline Support's unsecured claim. In early August, Airline Support received a notice of transfer of its $62,071 bankruptcy claim. The notice stated that the bankruptcy claim had been transferred and informed Airline Support that it had until August 22, 2006, to object to the transfer. On September 29,

Airline Support brought a challenge to the transfer of the bankruptcy claim in the United States Bankruptcy Court for the Southern District of New York. Airline Support moved for leave to file late, explaining that its objection to the transfer was late because, after receiving notice of the transfer, it conducted an internal investigation, retained counsel, and attempted to resolve the issue outside of court. Airline Support sought reconsideration of the bankruptcy court's decision, arguing that the transfer was null and void because Land had not been authorized to sell the corporation's assets.

After briefing and a hearing, the bankruptcy judge denied Airline Support's motion and ordered that ASM be substituted as "the transferee of all claims asserted by Airline Support in the captioned bankruptcy cases." However, the court also noted:

[T]he consequences of refusing to allow Airline Support to file a late objection to transfer are not fatal to its position, or even detrimental. The Court's denial of its motion was without prejudice and thus remitted Airline Support to its State court rights and remedies. . . . [T]his is where the dispute [regarding Land's authority to transfer the claim], which is entirely tangential to the bankruptcy case, should be resolved.[3]

ASM incurred and paid $21,247.94 in attorney's fees responding to Airline Support's challenge in bankruptcy court.

On February 15, 2007, Airline Support sued ASM in superior court in Anchorage. Airline Support's amended complaint asserted, among other things, a claim to set aside the assignment agreement.[4] ASM counterclaimed for breach of contract, asserting that Airline Support had failed to reimburse ASM for the attorney's fees ASM incurred in bankruptcy court in violation of the terms of the assignment agreement.

Both parties moved for summary judgment as to whether Katie Land had authority to

**2.** In fact, the bankruptcy claim only had a $62,071 value, as ASM had originally stated. Northwest's additional debt to Airline Support was not part of the bankruptcy claim, and was directly paid in full by Northwest.

**3.** *In re Northwest Airlines Corp.,* 2007 WL 498285, *4 (Bankr.S.D.N.Y.2007) (Feb. 9, 2007).

**4.** Airline Support also asserted an Alaska Securities Act claim and an Unfair Trade Practices Act claim, neither of which are at issue on appeal.

execute the assignment agreement. Superior Court Judge Michael Spaan denied both motions. When Superior Court Judge John Suddock succeeded to Judge Spaan's caseload, the parties renewed their motions for summary judgment. Judge Suddock denied Airline Support's motion for summary judgment but granted summary judgment in favor of ASM, holding that Land had apparent authority as a matter of law. Specifically, the court held that no genuine material issue of fact remained because all three elements of apparent authority were satisfied as a matter of law: (1) Airline Support made manifestations that Land was its agent to ASM, (2) ASM relied on those manifestations, and (3) ASM reasonably interpreted Land's communication as an expression of authority on behalf of Airline Support. Airline Support moved for reconsideration; the superior court denied its motion.[5] The superior court also awarded ASM full reasonable fees arising from the state court proceeding pursuant to the fees provision of the assignment agreement. However, the superior court declined to award ASM the fees it had incurred in bankruptcy court, ruling that it did not have authority to award such fees.

Airline Support appeals the superior court's conclusion that Land had apparent authority arguing that ASM's interpretation of Airline Support's conduct was unreasonable as a matter of law. Airline Support also appeals the superior court's award of attorney's fees, arguing that the fees awarded were not "reasonable." ASM cross-appeals, arguing that the superior court erroneously concluded that it did not have authority to award fees incurred in bankruptcy court.

## III. STANDARD OF REVIEW

We review grants of summary judgment on questions of contract formation de novo.[6] We will affirm a grant of summary judgment if the evidence in the record presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[7] A genuine issue of material fact exists where reasonable jurors could disagree on the resolution of the issue.[8] When making the determination whether there are genuine issues of material fact, we will draw all reasonable inferences in favor of the non-moving party.[9]

On questions of law, we exercise our independent judgment.[10] We adopt the rule of law that is most persuasive in light of precedent, reason, and policy.[11]

## IV. DISCUSSION

**It Was Error To Hold That Katie Land Had Apparent Authority To Execute The Assignment Agreement As A Matter Of Law.**

In granting ASM's motion for summary judgment, the superior court held that Airline Support's accounting manager Katie Land had apparent authority to execute the assignment agreement as a matter of law. Airline Support argues that this was error.

We have adopted the Restatement's general rule for creation of apparent authority.[12] "Apparent authority to do an act is created as to a third person when a principal's conduct, reasonably interpreted,

---

5. After the superior court granted ASM's motion for summary judgment with respect to the apparent authority issue, Airline Support may have abandoned its Securities Act claim and the court granted ASM summary judgment on Airline Support's Unfair Trade Practices Act claim. This disposed of all of Airline Support's claims against ASM.

6. *Askinuk Corp. v. Lower Yukon Sch. Dist.*, 214 P.3d 259, 264 (Alaska 2009) (citing *Copper River Sch. Dist. v. Traw*, 9 P.3d 280, 283 (Alaska 2000)).

7. *Id.* (citing *Copper River*, 9 P.3d at 283).

8. *Burnett v. Covell*, 191 P.3d 985, 990 (Alaska 2008) (citing *McGee Steel Co. v. State for Use &*

*Benefit of McDonald Indus. Alaska, Inc.*, 723 P.2d 611, 614 (Alaska 1986)).

9. *Fletcher v. S. Peninsula Hosp.*, 71 P.3d 833, 840 (Alaska 2003).

10. *Askinuk*, 214 P.3d at 264 (citing *Copper River*, 9 P.3d at 283).

11. *Id.*

12. *Anderson v. PPCT Mgmt. Sys., Inc.*, 145 P.3d 503, 509 (Alaska 2006) (citing *City of Delta Junction v. Mack Trucks, Inc.*, 670 P.2d 1128, 1130 (Alaska 1983)).

'causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.' "[13] We consider three factors when evaluating apparent authority: "(1) the manifestations of the principal to the third party; (2) the third party's reliance on the principal's manifestations; and (3) the reasonableness of the third party's interpretation of the principal's manifestations and the reasonableness of the third party's reliance."[14]

## A. Manifestations by the principal

 The manifestation may be in the form of the principal's "written or spoken words or any other conduct."[15] "The manifestation may be directly communicated to the third party or may come through, among other things, signs or advertising."[16] However, no agency relationship exists where the principal never indicated to the third party that the supposed agent had authority.[17]

The superior court appears to have found that two instances of Airline Support's conduct were "manifestations" under the first prong of the apparent authority test. First, the superior court noted that Airline Support had forwarded ASM's solicitation letter and assignment agreement to Katie Land. Second, the superior court emphasized that Airline Support had furnished Land with Airline Support stationery.[18]

 Airline Support argues that forwarding the solicitation to Land is not a "manifestation." Citing *Bruton v. Automatic Welding & Supply Corp.*,[19] Airline Support argues that its conduct will qualify as a manifestation relevant to an apparent authority determination only if that conduct occurred before ASM sent the letter to Airline. The argument lacks merit. *Bruton* stands for the proposition that the only manifestations relevant to an apparent authority determination are those that occurred before the third party *relied*—not those that occurred before the third party acted in any way whatsoever.[20] Because Airline Support forwarded the letter to Land, supplied her with company stationery, and provided billing invoices to her *before* ASM sent its check—that is, before ASM relied—ASM was entitled to rely and the superior court did not err in considering these acts a manifestation that Airline Support clothed Land with the title of accounting manager and the authority implied by that title.[21]

---

13. *Askinuk*, 214 P.3d at 264 (quoting *Anderson*, 145 P.3d at 509).

14. *Id.* (citing *Anderson*, 145 P.3d at 509).

15. *Anderson*, 145 P.3d at 509 (quoting *Delta Junction*, 670 P.2d at 1130) (internal citations omitted).

16. *Id.* (citing RESTATEMENT (SECOND) OF AGENCY § 8 cmt. b (1958)).

17. *Id.* (citing *Bruton v. Automatic Welding & Supply Corp.*, 513 P.2d 1122, 1126 (Alaska 1973)).

18. Although the superior court looked to only these two facts in the record to support its conclusion that the manifestation prong of the apparent authority test was met—forwarding ASM's letter to Land and supplying her with company stationery—we note that other facts in the record support the conclusion: Airline Support provided Land with access to Airline Support billing invoices and it gave her the title of "accounting manager."

19. 513 P.2d 1122 (Alaska 1973).

20. *Id.* at 1126 ("After the fact manifestations ... are not evidence that a purported agent had apparent authority.").

21. The partial dissent disagrees with our conclusion that there are no genuine issues of material fact with regard to this first factor in the apparent authority analysis. But the dissent defines this factor too broadly, first characterizing it as " 'the manifestations of the principal to the third party' to determine whether the principal has signaled, by word or deed, that the agent has authority to act on the principal's behalf," (Dissent 611) and then equating "authority to act" with the ultimate issue in this dispute: "[w]hether Land had apparent authority to bind Airline Support to the terms of ASM's assignment agreement." (Dissent 611). This places too much weight on the first factor. While, as a generality, referring to an apparent agent's "authority to act" is fine, in applying the first factor we look only to the principal's manifestations and whether those manifestations clothe the agent with some authority—here, with a given title and whatever authority is implied by that title.

Thus, the after-the-fact protestations of Airline Support's president that the corporation was unaware of Katie Land's actions, that the corporation had not authorized them, and that it took steps to undo them, are all irrelevant to the first factor: the manifestations that Airline Support made to ASM. There is no genuine issue of material fact that Airline Support, in forwarding

## B. Third party's reliance

As to the second factor, the superior court found that ASM relied on Airline Support's manifestations by sending a check for $19,862.72 to Airline Support. Airline Support does not challenge this finding and has support in the record. Moreover, nothing in our case law or the Restatement suggests ASM's check did not satisfy the reliance requirement.[22]

## C. Reasonableness of the third party's reliance

 The third element of apparent authority is satisfied if the third party's interpretation of the principal's manifestations and reliance on those manifestations were reasonable.[23] On appeal, Airline Support asserts that the superior court erred in holding that ASM's interpretation of Airline Support and Land's actions was reasonable as a matter of law. Although we do not agree with all aspects of Airline Support's argument, we agree that Airline Support has raised genuine issues of material fact. Accordingly, we reverse and remand for further proceedings.

 The reasonableness of a third party's reliance on an alleged principal's manifestations is generally a question of fact.[24] A court should resolve a factual issue as a matter of law only if no reasonable juror could reach a different conclusion.[25] We have been reluctant to decide the reasonableness issue as a matter of law.[26] It is only in the most straightforward cases—those where reasonable jurors could not disagree—that it is appropriate for a court to decide the issue on summary judgment.[27]

This is not one of those cases. The two manifestations the superior court identified give rise to a narrow set of factual inferences. First, the fact that Airline Support furnished Land with its stationery gives rise to the inference that she is an Airline Support employee who has some authority to speak for the corporation. Second, the fact that Airline Support forwarded an envelope addressed to the "A/R Credit Manager" Katie Land gives rise to the inference that Land held the position of "credit manager" at Airline Support or a position akin to "credit manager."

ASM argues that because it sent the letter to Airline Support's "credit manager" in An-

---

ASM's solicitation letter to Land, in providing Land with Airline Support letterhead, in providing billing invoices to her, and in conferring the title of "accounting manager" upon her, had made manifestations to ASM that she held such a title and whatever authority was implied by that title. Whether that authority included executing the contract at issue in this case is covered under the third factor—the reasonableness of Airline Support's reliance—an issue about which genuine material facts are in dispute.

**22.** In fact, the Restatement explains that "an action or forbearance on the part of a third party as a result of the agent's action and the principal's manifestation" will generally satisfy the reliance requirement. RESTATEMENT (THIRD) OF AGENCY § 2.03 cmt. e (2006). Furthermore, "[t]o establish that an agent acted with apparent authority, it is not necessary for the plaintiff to establish that the principal's manifestation induced the plaintiff to make a detrimental change in position." *Id.*

**23.** *Askinuk Corp. v. Lower Yukon Sch. Dist.,* 214 P.3d 259, 264 (Alaska 2009) (citing *Anderson v. PPCT Mgmt. Sys., Inc.,* 145 P.3d 503, 509 (Alaska 2006)).

**24.** *See Cummins, Inc. v. Nelson,* 115 P.3d 536, 544 (Alaska 2005).

**25.** *Cf. Holland v. Union Oil Co. of Cal., Inc.,* 993 P.2d 1026, 1031 (Alaska 1999) ("Because it is 'generally . . . a question of fact whether the manual did modify the employment agreement,' this court should only conclude, as a matter of law, that the memo did not create a 'just cause' employment relationship, if no reasonable juror could conclude that it did." (citing *Parker v. Mat-Su Council on Prevention of Alcoholism & Drug Abuse,* 813 P.2d 665, 666 (Alaska 1991))); *Drobny v. Boeing Co.,* 80 Wash.App. 97, 907 P.2d 299, 302 (1995) ("Only if reasonable minds could not differ in resolving this [question of fact] should a trial court decide it as a matter of law.").

**26.** *See, e.g., City of Delta Junction v. Mack Trucks, Inc.,* 670 P.2d 1128, 1130–31 (Alaska 1983) (reversing superior court's decision that there was no apparent authority as a matter of law on grounds that reasonable jurors could disagree as to whether inference of authority was reasonable); *Cummins,* 115 P.3d at 544 (affirming superior court's decision to have jury evaluate evidence of apparent authority and decide whether third party's interpretation was reasonable).

**27.** *Cf. Delta Junction,* 670 P.2d at 1130–31.

chorage and received a response from someone identifying herself as Airline Support's "accounting manager" in Georgia,[28] it was reasonable to infer that Airline Support had intentionally routed the letter to a company official with authority to sell the claim. The superior court seems to have agreed with ASM's assertion that routing the envelope to another office gave rise to "an inference of affirmative forwarding." From the fact that Airline Support forwarded the envelope to Land in Georgia, the superior court concluded that Airline Support "opted to put that matter under her purview." We disagree.

"Accounting manager" and "credit manager" are nebulous titles that do not obviously apply to distinct positions within the corporate structure. Having addressed a letter to the "credit manager" and having received a response from the "accounting manager," ASM's inference—on this basis alone—that Airline Support had purposely put the solicitation before the accounting manager because she had the authority to transfer the claim, is not the only inference possible. Another reasonable inference is that Airline Support routed the letter to Land because she functioned as the "credit manager"—(or something like it). But it cannot be said that this must mean that Airline Support had intentionally put the matter before Land *because she had the authority to assign Airline Support's claim.*

In its order denying Airline Support's motion for reconsideration, the superior court appears to have departed slightly from its earlier position. Instead of the conclusion that Airline Support's manifestations gave rise to the reasonable inference that it had "opted to put [the] matter under [Land's] purview," it adopted the more moderate position that the forwarding gave rise to the inference that Land was Airline Support's credit manager. Rejecting Airline Support's motion for reconsideration, the superior court wrote:

> The letter from ASM to Airline Support was addressed to the "credit manager". Airline Support tends to minimize her as a mere bookkeeper. ASM, having mailed the letter to the credit manager, could reasonably assume that the mail was routed to a company official of that or comparable rank.... None of [the arguments in Airline Supports's motion for reconsideration] in any way detracts from the reasonable conclusion that this particular credit manager had authority *by virtue of her corporate status* to consummate the assignment of a bankruptcy claim. In this instance, there is simply no logical link between [those arguments] and *her apparent authority to act consistently with her perceived rank in the corporate hierarchy.* (Emphasis added.)

■ We agree with the superior court that it was reasonable for ASM to assume Land occupied a position comparable to credit manager. We disagree, however, that it was reasonable *as a matter of law* for ASM to conclude "by virtue of [Land's] corporate status" that she had the authority to sell a company asset potentially worth over $60,000. "[A]pparent authority can be created by appointing a person to a position, such as that of manager or treasurer, which carries with it generally recognized duties; to those who know of the appointment there is apparent authority to do the things ordinarily entrusted to one occupying such a position...."[29] However, neither "credit manag-

28. Apparent authority is based on a principal's manifestations not the agent's. *See Anderson v. PPCT Mgmt. Sys., Inc.,* 145 P.3d 503, 509 (Alaska 2006) (quoting RESTATEMENT (SECOND) OF AGENCY § 27 (1958)). Consequently, the fact that *Land identified herself* as "accounting manager" would not, on its own, be relevant. However, in Land's affidavit—which Airline Support submitted with its motion for summary judgment—she identifies herself as Airline Support's "accounts manager," suggesting that, at the very least, Airline Support allowed her to use this title, and at most, bestowed it upon her. For this reason, it is appropriate to conclude that Land's "accounting man-

ager" title was also a manifestation by Airline Support, and therefore, relevant to the apparent authority inquiry. *Cf. City of Delta Junction,* 670 P.2d at 1131 (holding that it could reasonably be inferred that Alaska Mack's use of Mack, Inc.'s corporate name and trademark was with Mack, Inc.'s knowledge and approval).

29. RESTATEMENT (SECOND) OF AGENCY § 27 cmt. a (1958). *See also* RESTATEMENT (THIRD) OF AGENCY § 3.03 cmt. b (2006) ("A principal may ... make a manifestation by placing an agent in a defined position in an organization.... Third parties who interact with the principal through the

er" nor "accounting manager" so obviously carries with it the authority to sell a company's significant assets as to make it a matter of law.[30] While a reasonable juror bringing his or her broad practical experience to bear *could* reach this conclusion, we cannot say that, as a matter of law, this is the only reasonable conclusion. Accordingly, we reverse the superior court's grant of summary judgment and remand for trial.

ASM argues that the superior court's conclusion that Land had apparent authority is supported by a case from Maine, *Steelstone Industries, Inc. v. North Ridge*.[31] In that case, the Maine Supreme court held that the trial court could infer that the alleged principal had cloaked the alleged agent with apparent authority where the principal had, among other things, forwarded certain documents to the agent.[32] We conclude that *Steelstone* is of limited relevance to the present case for two reasons.

First, the Maine Supreme Court was reviewing the trial court's conclusion that the agent had apparent authority as an issue of fact—not as a matter of law.[33] Accordingly, the *Steelstone* court applied the clear error standard and determined that the record *could* support such a finding,[34] but did not ask whether reasonable jurors could disagree on the issue, which is the question here. Consequently, *Steelstone* has only limited relevance to the current case. Second, the facts of *Steelstone* are distinct from those currently before us. In that case, the principal—a business operating an apartment complex— hired the agent as a sub-contractor, allowed the agent to operate an office out of its building, and arranged for one of its employees to work for the agent.[35] The principal also orchestrated a meeting between the principal's representative, the agent, and the third party, during which the principal's representative introduced the agent to the third party as the project manager, and failed to mention anything about the contractor/subcontractor relationship.[36] While it is true that the *Steelstone* court observed that the principal had forwarded the third party's proposals to the agent, the court considered this detail as only one of many facts, including many which were demonstrably more significant. In short, the factual landscape was quite distinct from the one currently before us. Although *Steelstone* suggests that a principal's decision to forward documents to an agent is relevant to an apparent authority determination, it in no way suggests that it is dispositive of the question. For these reasons, *Steelstone* is of limited value to the resolution of this case.

Airline Support cites a number of outside cases that it argues show that Land did not have apparent authority. But like *Steelstone*, these cases are of limited value. In *CSX Transportation, Inc. v. Recovery Express, Inc.*,[37] a federal court in Massachusetts held that a third party's inference of a purported agent's authority was unreasonable as a matter of law when the principal's sole manifestation was the issuance to the agent of an email address utilizing the principal's domain name.[38] Airline Support analogizes *CSX* to the current case, arguing that Land's possession of Airline Support letterhead is insufficient to create apparent authority. Indeed, many courts have held that furnishing

agent will naturally and reasonably assume that the agent has authority to do acts consistent with the agent's position or role unless they have notice of facts suggesting that this may not be so.").

**30.** Neither party appears to have submitted evidence directly on point. ASM's senior vice-president did submit an affidavit explaining that his company directed the letter to "A/R Credit Manager" because "the credit manager of the company's accounts receivable department ... manages the debts owed to the company."

**31.** 735 A.2d 980, 983 (Maine 1999). Although the superior court discussed *Steelstone* in the context of summarizing ASM's arguments, to what extent, if any, the superior court actually relied on the case is unclear.

**32.** *Id.*

**33.** *Id.*

**34.** *Id.*

**35.** *Id.* at 982.

**36.** *Id.*

**37.** 415 F.Supp.2d 6 (D.Mass.2006).

**38.** *Id.* at 10–11.

someone with the trappings of corporate legitimacy—letterhead, business cards, company paraphernalia, etc.—does not necessarily give rise to apparent authority as a matter of law.[39] But the act of furnishing Land with letterhead was not Airline Support's only manifestation; as discussed above, by forwarding the envelope to Land, Airline Support also gave rise to the reasonable inference that she was the credit manager of its accounts receivable department.

Airline Support also analogizes this case to *Trustees of the Ohio Bricklayers Pension Fund v. Skillcraft Systems of Toledo, Inc.*,[40] an unpublished opinion from the Sixth Circuit. As ASM argues in response, this case is distinguishable. In *Skillcraft*, the third party argued that the principal's bookkeeper had apparent authority to execute a binding collective bargaining agreement because the principal had granted the bookkeeper authority to perform other related functions in the past, such as communicating with the public and filling out and signing payroll and fringe benefit documents that had a binding effect upon the principal.[41] The court held that prior limited grants of authority like these did not create apparent authority to execute a binding collective bargaining agreement.[42] The court also emphasized two additional details. First, it expressed skepticism regarding the authenticity of the third party's argument, noting that the third party presented no evidence that it had known before the litigation began that the bookkeeper had filled out the form.[43] Second, it favorably quoted the district court's conclusion that the third party's argument would have been much stronger had the agreement contained spaces for the principal's signature—spaces which, along with "anything purporting to be an actual signature," were absent from the hard copy of the agreement.[44]

 Unlike *Skillcraft*, there is nothing that prompts us to doubt the authenticity of ASM's argument. Additionally, the assignment agreement form at issue here came complete with signature lines, and the executed agreement contained what was clearly Land's signature. But even without these differences, *Skillcraft* is distinguishable. In *Skillcraft*, the Sixth Circuit held that the kinds of acts the bookkeeper had done in the past did not create apparent authority to do a very different kind of act—that is, to execute a binding collective bargaining agreement.[45] But ASM does not base its argument on the kind of authority Land exercised in the past. Rather, ASM bases its argument on the fact that Airline Support forwarded the envelope to Land. As discussed above, this fact reasonably gives rise to the inference that Land was ASM's "credit manager"; the question remains whether a credit manager of a company's accounts receivable department would typically have the authority to sell one of the company's significant assets.[46] Because this question is quite different from the one addressed in *Skillcraft*, that case is not relevant.[47]

---

**39.** *See, e.g., Muscletech Research & Dev., Inc. v. E. Coast Ingredients, LLC,* No. 00–CV–0753A(F), 2004 WL 941815, at *32 (W.D.N.Y. Mar.25, 2004) (holding that issuance of company credit card, business cards with company logo, possession of company paraphernalia, and appearing in company advertisements were insufficient to create apparent authority where circumstances triggered duty to inquire into agent's purported authority); *Asplund v. Selected Invs. in Fin. Equities, Inc.,* 86 Cal.App.4th 26, 103 Cal.Rptr.2d 34, 48–49 (2000) (holding purported issuance of plaque and business cards insufficient to create apparent authority); *Cowburn v. Leventis,* 366 S.C. 20, 619 S.E.2d 437, 448 (App.2005) (holding that supplying forms and business cards were not sufficient to create apparent authority).

**40.** 99 Fed.Appx. 600 (6th Cir.2004).

**41.** *Id.* at 601.

**42.** *Id.* at 601–02.

**43.** *Id.*

**44.** *Id.* at 602 (describing the form's format as "confusing").

**45.** *Id.* at 601–02.

**46.** *See* RESTATEMENT (SECOND) OF AGENCY § 27 cmt. a (1958) ("[A]pparent authority can be created by appointing a person to a position, such as that of manager or treasurer, which carries with it generally recognized duties; to those who know of the appointment there is apparent authority to do the things ordinarily entrusted to one occupying such a position, regardless of unknown limitations which are imposed upon the particular agent.").

## V. CONCLUSION

Because whether Land had apparent authority to execute the assignment agreement is a disputed question of material fact, we REVERSE and REMAND to the superior court for further proceedings. Accordingly, we also VACATE the superior court's order awarding ASM full reasonable fees.[48]

CHRISTEN, Justice, not participating.

WINFREE, Justice, concurring.

STOWERS, Justice, concurring in part and dissenting in part.

WINFREE, Justice, concurring.

I agree with the court's conclusion that the summary judgment ruling in favor of ASM Capital II. L.P., must be reversed and the matter remanded for trial on the reasonableness of ASM's reliance on Katie Land's position as "accounting manager" for apparent authority to enter into the contract on behalf of Airline Support, Inc. There is no dispute that ASM sent its offer to Airline Support's "A/R—Credit Manger" at its Anchorage office, that Airline Support routed the mail to Land, that Land was Airline Support's "accounting manager," and that Land responded to ASM using that title on Airline Support letterhead. In my view it is unnecessary to delve into questions about whether Airline Support's internal workings were or were not manifested to ASM for purposes of apparent authority or what may or may not be manifested by the mere use of company letterhead. I therefore do not join in that portion of today's decision. The only issue reasonably in dispute is the issue remanded for trial: whether Land's company title of "accounting manager" would reasonably manifest apparent authority to enter into the con-

---

**47.** Airline Support presents several other arguments that are both waived and unpersuasive. First, it makes the policy argument that holding that Land had apparent authority on these facts will harm small Alaskan businesses, which often rely on outside bookkeepers to collect on accounts and debts. This argument is waived because Airline Support failed to raise it below. *Millette v. Millette*, 177 P.3d 258, 267–68 (Alaska 2008) (explaining that issues are waived for purposes of appeal if not adequately raised below). In any event, this argument is unpersuasive. It is just as likely that precluding apparent authority in a case like this one, where a reasonable juror could reach the conclusion that the third party's reliance on the principal's manifestations was reasonable, could harm Alaskan businesses. If this court were to depart from the current reasonableness standard in the way Airline Support seems to suggest, out-of-state companies like ASM could be unsure about which kinds of manifestations they can safely rely on and in turn be hesitant to contract with Alaskan companies.

Second, Airline Support argues that its alleged repudiation precludes apparent authority. Because Airline Support raised this argument for the first time in its reply brief, it is waived. *See Weiner v. Burr, Pease & Kurtz, P.C.*, 221 P.3d 1, 6 n. 14 (Alaska 2009). In any case, the argument lacks merit. Where a principal timely repudiates an agreement entered by an otherwise unauthorized agent, the agreement is not ratified. *See Trs. of Am. Fed'n of Musicians & Emp'rs Pension Fund v. Steven Scott Enters., Inc.*, 40 F.Supp.2d 503, 511 (S.D.N.Y.1999). But timely repudiation has no bearing on apparent authority in this context. *See Bruton v. Automatic Welding & Supply Corp.*, 513 P.2d 1122, 1126–27 (Alaska 1973) (treating ratification and apparent authority as two distinct and independent bases for binding a principal). Consequently, timely repudiation has no bearing on apparent authority here.

Finally, Airline Support implies that ASM had a duty to inquire. Again, because Airline Support failed to raise this argument in its opening brief, the argument is waived. *See Weiner*, 221 P.3d at 6 n. 14. And in any event, it lacks merit. In *Sea Lion Corp. v. Air Logistics of Alaska, Inc.*, this court rejected the argument that the third party always has an affirmative duty to investigate the actual extent of the alleged agent's authority. 787 P.2d 109, 117 n. 3 (Alaska 1990). Moreover, as the Second Circuit has observed, the duty to inquire is merely "an alternative way of asking whether the third party reasonably relied on the representations of the agent that he possessed authority to bind the principal." *Herbert Const. Co. v. Cont'l Ins. Co.*, 931 F.2d 989, 996 (2d Cir.1991). By analyzing whether ASM's reliance was reasonable, we have effectively addressed whether ASM had a duty to inquire as a matter of law. We do not need to separately analyze the issue in this case. Although there may be circumstances in which investigating the scope of the purported agent's authority is the third party's only reasonable course of action, we decline to consider them here.

**48.** Because we remand to the superior court for further proceedings regarding the assignment agreement's enforceability, we do not reach ASM's cross-appeal as to whether it is contractually entitled to fees incurred in bankruptcy court.

tract tendered by ASM. I agree with this portion of today's decision.

STOWERS, Justice, concurring in part and dissenting in part.

I agree that there is a genuine issue of material fact as to whether Airline Support's accounting manager, Katie Land, had apparent authority to execute ASM Capital's assignment agreement. The court concludes that a genuine issue of material fact arises from the third factor in our apparent authority analysis, namely, that on the state of the evidence it cannot be said as a matter of law that ASM acted reasonably in relying on the principal's (Airline Support's) manifestations to the third party (ASM) of the agent's (Katie Land's) authority to bind Airline Support to the assignment agreement. I agree with this determination and to this extent concur with the court's opinion.

I disagree with the court's conclusion that there are no genuine issues of material fact with respect to the first factor in our apparent authority analysis. The first factor looks to "the manifestations of the principal to the third party" to determine whether the principal has signaled, by word or deed, that the agent has authority to act on the principal's behalf.[1] The court concludes that because Airline Support gave Land the title "accounts manager," because it provided Land with company stationery, because it sent ASM's offer and assignment agreement to Land in Georgia, and because it sent Land the relevant billings from Airline Support to Northwest Airlines, these facts are "manifestations" of Land's authority to execute the assignment agreement as a matter of law.

The court is mistaken. These facts might be accepted by a *factfinder* as sufficient to establish a manifestation by the principal of authority in the agent, but these facts, in the context of all of the relevant facts, do not establish a manifestation of apparent authority *as a matter of law.*

This appeal comes to the court from summary judgment granted by the superior court. The question is whether there are any genuine issues of material fact proffered by the opponent of summary judgment.[2] If there is a single genuine issue of material fact, summary judgment is precluded. I believe that the court overlooks several critical genuine issues of material fact.

Airline Support's president, director, and sole shareholder, Donald Tulin, provided the superior court with an affidavit in which he swore:

> I emphasize that the corporation was unaware of the transfer of the corporate claim by bookkeeper, Katie Land, until after the fact. I emphasize that Airline Support, Inc.'s Board of Directors did not authorize the transfer of its claim, and when the transfer was discovered, the corporation took action by contacting ASM and attempting to resolve this matter, and also took action to set the transfer aside.

Tulin also attested:

> Katie Land is, in fact, a bookkeeper. She does not sit on the Board of Directors; she is not a signatory on the corporation's bank accounts; she does not buy or sell corporate assets in the normal course of our business; and ... her transfer of [Airline Support's] claims to ASM was a mistake.

These affidavit statements are sufficient to raise a genuine issue of material fact as to the factual question whether Land had apparent authority to bind Airline Support to the terms of ASM's assignment agreement, including the question whether Airline Support did or said anything to create an appearance of authority in its agent, Land.[3]

The factual context is critical to the proper analysis. ASM sent a letter and an Assignment of Claim Agreement to Airline Support seeking to purchase, at "deep discount," amounts owed to Airline Support by North-

---

1. *Anderson v. PPCT Mgmt. Sys., Inc.*, 145 P.3d 503, 509 (Alaska 2006) (citing Restatement (Second) of Agency §§ 8 cmt. b, 27 (1958)).

2. Alaska R. Civ. P. 56(c).

3. It is undisputed that neither Airline Support's president, director, and sole shareholder, Donald Tulin, nor anyone at Airline Support's office in Anchorage, ever communicated directly with ASM prior to ASM's receipt of the assignment agreement signed by Land.

west Airlines, which was in bankruptcy. The assignment form contains the following language:

Assignor represents and warrants that it ... has the full authority to enter into this Agreement and that the individuals whose signatures appear below hereby expressly represent that they have the authority to bind the party for which they sign this Agreement.

\* \* \*

This Agreement shall be governed by and construed in accordance with the laws of the State of New York.... Any action under or relating to this Agreement may only be brought in any State or Federal court located in Nassau County, in the State of New York.... In any action hereunder the Assignor waives the right to demand a trial by jury.

\* \* \*

Assignor will indemnify Assignee ... and save [it] harmless from and against all claims, actions, liabilities and Assignee shall not be liable for any damages, or any lost profits whatsoever, relating to the performance of its obligations hereunder.

What is important to understand is that the assignment agreement did not merely seek Airline Support's assent to sell its Northwest Airlines accounts receivable. The agreement also sought Airline Support's promises to bestow huge litigation benefits on ASM in the event that litigation ensued. Putting aside the question whether Land, Airline Support's account manager and bookkeeper, had authority to sell the accounts receivable, there was no evidence proffered by ASM (other than the fact that Land signed the agreement and used company stationery in her correspondence with ASM) that Land

had authority to: waive Airline Support's right to jury trial; bind Airline Support to an indemnification and hold harmless agreement; and give up Airline Support's right to seek damages or lost profits from ASM. What bookkeeper or accounts manager (whose authority did not even include being a signatory on Airline Support's checks, according to Tulin's affidavit) has the authority to bind its employer to such one-sided and potentially devastating promises, even where she received her employer's billing statements, company stationery, and an unopened letter soliciting a purchase at deep discount of the company's accounts receivable? And based on what?—the agent's signature to a form contract prepared by the third party that states that she "represents and warrants that [she] ... has the full authority to enter into this Agreement and that [she] ... expressly represent[s] that [she] ha[s] the authority to bind the party for which [she] sign[s] this Agreement."

But it never is the case that a third party can bind the principal based on the *agent's* representation of authority.[4] Yet that appears to be exactly what has happened in this case. Because I believe there are genuine issues of material fact as to both the first factor (manifestation by the principal) and third factor (reasonable reliance by the third party) of this court's apparent authority analysis, I dissent in part from the court's opinion.[5]

4. RICHARD A. LORD, 12 WILLISTON ON CONTRACTS § 35:12 (4th ed. 1990) ("Agents often attempt to create an appearance of authority by their own acts or statements, but such an appearance does not create apparent authority; the principal is only liable for the appearance of authority caused by the principal's own conduct.").

5. There is an important issue unaddressed by the parties and the superior court, and not at issue on appeal. Because there are genuine issues of material fact, at least as to the reasonableness of ASM's reliance on Airline Support's purported manifestations giving rise to Land's apparent au-

thority to bind Airline Support, the case is being remanded for trial. But tried by who? Airline Support filed a demand for jury trial. ASM's form contract provides that Airline Support has waived its right to jury trial. The superior court granted ASM's motion for an order providing that Airline Support is not entitled to a jury trial. But whether Airline Support's waiver of trial by jury is valid depends on whether Land had apparent authority to bind Airline Support to all terms of the assignment agreement, and that will be the subject of the trial. To the extent that ASM relied on Airline Support's purported waiv-

er of jury trial in its motion, the superior court's reliance on that waiver may have been prema- ture.